(No. 27713.—

NANCY ANN CREIGHTON *et al. vs.* THE COUNTY OF POPE, Appellant.—(MAE HATTON, Admx., *et al.,* Appellees.)

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

J. Ado Whiteside, State's Attorney, of Golconda, Taylor E. Wilhelm, of Ottawa, and Parke E. Daugherity, of Streator, for appellant.

Charles Durfee, of Golconda, Grover E. Holmes, of Metropolis, and C. O. Conley, of East St. Louis, (Leslie A. Cranston, and Marion C. Cook, both of DuQuoin, of counsel,) for appellees.

Mr. Justice Wilson delivered the opinion of the court:

The plaintiffs, Nancy Ann Creighton and four other persons, individually, Mae Hatton, administratrix of the estate of Gus Hatton, deceased, and Arthur Poe, administrator of the estate of Mary Lou Poe, deceased, filed their second amended complaint in the circuit court of Pope county against the defendant, the county of Pope, seeking awards representing the balance alleged to be due and owing them as benefits under "An act for the relief of the blind." (Ill. Rev. Stat. 1943, chap. 23, par. 279 et seq.) Defendant answered the complaint, evidence was heard and judgments rendered in favor of plaintiffs and against defendant. In a second action, Carlos Craig, Augusta Wilson and J. L. Owens, individually, and the administrators and administratrices of the estates of six deceased persons, sought like relief against the county of Pope. The cause was dismissed as to Owens upon his own motion. This second action resulted in judgments in favor of Augusta

Wilson, Carlos Craig and the administrators and administratrices of the estates of five decedents, and a judgment in favor of the defendant and against the estate of one of the deceased persons. Defendant prosecuted separate appeals to the Appellate Court for the Fourth District from the judgments in favor of the respective administrators and administratrices of the estates of the deceased persons and, also, from the judgment in favor of Craig. The Appellate Court affirmed the judgments rendered in favor of all the personal representatives and reversed the judgment as to Craig and remanded the cause as to him. (*Creighton* v. *County of Pope,* 320 Ill. App. 256.) A certificate of importance has been granted, and the record is before us for a further review. Craig having accepted the judgment of the Appellate Court adverse to him, only the propriety of the judgments in favor of the seven administrators and administratrices is presented for decision.

Each of the deceased persons whose estate is represented by an administrator or an administratrix was, for a long period of time prior to his or her death, a blind person, within the contemplation of the Blind Relief Act. They had satisfied the provisions of the statute entitling them to its benefits. Their names had been placed upon the blind pension rolls of the county and they had been paid benefits so long as the county was financially able so to do. At the time of death, benefits accruing to each of these persons remained unpaid in amounts varying from $25 to $1775. Defendant resisted payment to the personal representatives on the ground, among others, that any claims which may have accrued to the deceased persons did not survive to their administrators, heirs, legatees or devisees and that, in consequence, no sum was due to the administrators of the several estates. The sole controverted question here is whether the right to claim the unpaid installments of blind relief benefits accruing before the death of

a beneficiary survives and passes to his personal representative. Disposition of this issue requires recourse to the provisions of the applicable statute.

Section 1 of the Blind Relief Act, as it obtained in 1939 when these actions were instituted, (Ill. Rev. Stat. 1939, chap. 23, par. 279,) makes it lawful and obligatory for each county of the State to contribute money from the charity or general funds of the county toward the support of each blind person who comes within the statutory provisions. The State, in turn, it is provided, shall reimburse each county to the extent of one-half the sums contributed in compliance with the act. Section 1½ provides that if the general fund of any county is insufficient to pay for such support, the county shall levy and collect a special tax for the purpose of paying the support. Section 2 designates the beneficiaries of the law, namely, all male persons over the age of twenty-one years and all female persons over the age of eighteen who are declared to be blind, in conformity with the act, and declares that they shall receive as a benefit $365 annually, payable quarterly, "upon warrants properly drawn on the treasurer of the county of which such person or persons are residents." Section 2½ defines a blind person as one whose sight is so defective as to render him unable to perform the ordinary duties or tasks for which eyesight is essential. The third section denies the benefits of the statute to persons, among others, who, if unmarried, have incomes in excess of $465 per annum, and, if married, where the total annual income of the applicant and spouse is $1000 or more. Section 4 makes it the duty of the board of county commissioners or supervisors to appoint a regular practicing physician as examiner of applicants for benefits. The next section prescribes the duties of the examiner and fixes his remuneration. Section 5 provides, in part, that the examiner shall endorse on all applications a certificate to each

applicant, "showing whether he or she is blind or not." By section 6, persons seeking the benefits of the act are required to appear before the county clerk and make affidavit to the facts which bring them within the provisions of the law, the affidavit to be deemed an application for benefits. The county clerk, by section 7, is required to register the names, addresses and numbers, and dates of the examination of each of the applicants who have been determined to be entitled to benefits and, upon this registration and his certificate to the county commissioners or supervisors with the names and residences of each applicant complying with the act, "such applicant shall be entitled to said benefit from and after the first day of the months of January, April, July and October, thereafter." By section 8 it is made the duty of the board of county commissioners or supervisors to provide, in its annual appropriation, for the payment of benefits to the persons so entitled, and "to cause warrants on the county treasurer to be drawn, properly endorsed, payable to each of said persons in said county each quarter in each year thereafter, during the life of said persons, while they are residents of said county or until said disability is removed." Section 8½ provides for the levy and collection each year of an annual tax for the purpose of creating a fund to be known as the "Blind Relief Fund," out of which shall be paid the State's one-half of the contribution to the blind. The ninth section ordains that a person who makes a false affidavit in order to obtain the benefits provided shall, upon conviction, be deemed guilty of perjury. The tenth section imposes the duty on each county to continue to contribute $250 towards the relief of each blind person, without reimbursement or contribution on the part of the State, until the special State tax provided for in section 8½ has been levied, collected and paid into the Blind Relief Fund in the State treasury. It will be observed that the statute makes no provision for the survival of the right of action for blind benefits.

A review of the provisions of the statute discloses that its primary purpose is the alleviation of the necessitous circumstances of persons afflicted with blindness. The right to relief is, necessarily, a right personal to the blind person. The explicit provisions of sections 7 and 8 dispel all doubt in this respect. In particular, the seventh section provides for the registration of applicants for blind relief, their certification to the county commissioners or supervisors and, upon these requirements being met, the applicant shall be entitled to benefits. The statute, in making provision for the certification of names and residences of each applicant determined to be entitled to blind benefits and for the issuance of warrants to the persons entitled to benefits, makes abundantly plain the legislative mandate to pay only such persons as are expressly or by necessary implication designated in the statute. The effect and intent of the provision in section 7 that "such applicant shall be entitled to said benefit from and after the first day of the months of January, April, July and October, thereafter" is to make the blind relief benefits payable in advance so as to prevent their assignment. Assignment of such benefits would, in large measure, defeat the ameliorative purpose of the statute by enabling the assignees to obtain blind relief benefits to the prejudice of blind beneficiaries, the objects of the legislature's solicitude. The next section specifically provides that the warrants drawn on the county treasury for the payment of blind benefits shall be made payable to the beneficiaries each quarter in each year while they are residents of the county or until their disability is removed. These plain terms of the statute manifest the legislative intent to make payment to the beneficiaries themselves, in advance, during life only, and to no other persons. In other words, defendant can only issue warrants to persons on the blind relief rolls. This being so, the commissioners are without authority to recognize or honor the claim of any other person and, certainly, they cannot pay

blind relief after a blind beneficiary is dead. No provision being made whereby the estates of deceased blind persons or their heirs-at-law can obtain the benefits granted by the Blind Relief Act, we cannot, under the guise of statutory construction, add to the beneficiaries named in the statute.

The nature of the benefit fortifies our conclusion. No constitutionally imposed obligation rests upon the State of Illinois or any local governmental unit to support poor persons or blind persons. As we said in *People ex rel. Heydenreich* v. *Lyons,* 374 Ill. 557, "Nor is there a common law obligation upon any governmental unit to support the poor and destitute. In short, no legal obligation, in the absence of a statute creating the duty, rests upon either the State government or local units to relieve those in necessitous circumstances." The quoted language applies with equal force to the grant of relief to the blind. In *Eddy* v. *Morgan,* 216 Ill. 437, this court said: "A pension is a bounty springing from the graciousness and appreciation of sovereignty. It may be given or withheld at the pleasure of a sovereign power." In *Pecoy* v. *City of Chicago,* 265 Ill. 78, the court said: "Pensions are in the nature of bounties of the government, which it has the right to give, withhold, distribute or recall at its discretion." Again, "The right to a pension is not a vested right." (*McCann* v. *Retirement Board,* 331 Ill. 193.) The foregoing observations do not apply to pension laws where contributions are paid into pension funds, as prescribed by the applicable statutes. Manifestly, if the right to a pension is a bounty and not a vested right, a blind benefit is, likewise, a gratuity and the right thereto is not vested. Referring specifically to benefits payable under the Blind Relief Act, we said, in *Proffitt* v. *County of Christian,* 370 Ill. 530, "Nor are the payments under this act to be considered as a gift or bounty. The act requires the counties to provide for such payments as a public charity. Such payments

have a tendency to prevent the necessity for the erection of homes for the blind in those cases where they are unable to gain a livelihood. The maintenance and care of the blind falls in the same class of duties resting upon counties as the support of dependent children and the support of paupers." Since no legal duty existed at common law to relieve the blind, statutes imposing this duty are in derogation of the common law and must be construed strictly. (*Coon* v. *Doss,* 361 Ill. 515.) The grant of blind relief is a gratuity, irrespective of its common characterization as a pension, from the county and the State, to the recipient. The right is wholly statutory and, also, as stated, unknown to the common law. Since the Blind Relief Act reflects an intent to render relief to persons afflicted with blindness, an intent to support the individual, it follows necessarily that the purpose of the grant can be satisfied only by payments to the beneficiary.

From our conclusion that the right of action is personal to the recipient of blind relief, it follows that the familiar rule invoked by defendant concerning survival of actions is applicable. Where a right of action is so entirely personal that a person cannot by contract place it beyond his control, the action will not survive, the general rule being that the qualities of assignability and survivability of causes of action, being tests each of the other, are convertible terms. (*Wilcox* v. *Bierd,* 330 Ill. 571; *Olson* v. *Scully,* 296 Ill. 418; *Selden* v. *Illinois Trust and Savings Bank,* 239 Ill. 67.) "The line of demarcation at common law separating those causes of action which survive from those which do not is that in the first the wrong complained of affects primarily and principally property and property rights, and the injuries to the person are merely incidental, while in the latter the injury complained of is to the person, and the property and rights of property affected are merely incidental. In the former case, the cause of action

survives, while in the latter, it abates." ( 1 C. J. S., Abatement and Revival, sec. 132.) The reason for the seeming barbarity of the common law, it has been said, is that matters of charity were thought more appropriate for the church. (21 R. C. L. Poor and Poor Laws, sec. 2.) "Whether an action survives depends on the substance of the cause of action, not on the forms of proceeding to enforce it." (*Schreiber* v. *Sharpless,* 110 U. S. 76.) Here, the nature and substance of the cause of action is blind relief being paid to estates—not named as objects of charity. Again, in Illinois, it has long been settled that a cause of action created by statute does not survive unless declared so to do by the statute itself or unless provision for its survival is made by some other statute. (*Olson* v. *Scully,* 296 Ill. 418; *Selden* v. *Illinois Trust and Savings Bank,* 239 Ill. 67; *Storrs* v. *St. Luke's Hospital,* 180 Ill. 368; *Hitt* v. *Scammon,* 82 Ill. 519; *Turney* v. *Smith,* 14 Ill. 242.) Neither the Blind Relief Act, section 339 of the Probate Act, (Ill. Rev. Stat. 1943, chap. 3, par. 494,) formerly section 123 of the Administration Act, nor any other statute of this State provides for the survival of a cause of action for blind relief benefits. At common law there was no right of action for blind relief, and, under our statute, the right of action available to beneficiaries entitled to such relief in their lifetime does not survive to their personal representatives. The justice and wisdom of the statute are proper subjects for legislative, but not judicial, consideration.

Plaintiffs invoke the familiar rule that although a contract may be such that it is not assignable, nevertheless, money which has become due under it may be assigned. (*Ginsburg* v. *Bull Dog Auto Fire Ins. Ass'n,* 328 Ill. 571.) This accepted principle is inapplicable for the adequate reason that the receipt of blind relief is not a contractual right. "The law will not imply a contract to do a thing

merely because a statute imposes a duty to do that thing. It has been said that neither a statute nor a rule of law raises an implied promise. There must always be the fact of a consideration outside of and in addition to the statute or the rule of law; and the promise is implied rather from the consideration than from the statute." (12 Am. Jur., Contracts, sec. 6.) Here, the right to receive blind relief benefits is personal to the beneficiary, the relief granted is a gratuitous allowance, and not a contractual obligation.

Plaintiffs also place reliance upon the following statement in *Proffitt* v. *County of Christian,* 370 Ill. 530, "Where a pension has accrued the beneficiaries have a vested right therein." Applied to the factual situation in the *Proffitt case,* the statement was entirely correct, the beneficiaries, all being living blind persons who had met the requirements of the statute, and, consequently, were personally entitled to benefits. The rights of living blind persons are vested to the extent they may invoke the aid of the courts in coercing a county to perform its statutory duty. It does not follow that their rights pass to their administrators, in the absence of a statutory provision to this effect. Plaintiffs argue further that their cause of action is not created by statute but that they are "proceeding under the law of procedure applicable only to the action of *assumpsit,* a well recognized common law procedure." This is mere quibbling and wholly fails to show that the asserted right of action of a blind person to recover benefits accruing during the latter's lifetime is a right of action which existed at common law.

The record discloses that one of the original plaintiffs was Mary Lou Poe, who died during the pendency of the litigation, and her administrator, Arthur Poe, was substituted as plaintiff when the amended complaint in the first action was filed. If the cause of action is one which does not survive, death not only puts a final end to the action,

but prevents the bringing of a new action by or against personal representatives. Singularly applicable is the observation of this court in *Selden* v. *Illinois Trust and Savings Bank,* 239 Ill. 67: "The right to continue the prosecution of a suit or proceeding upon the death of a party plaintiff, as given by our statute, (section 10 of the chapter on abatement,) is limited to those cases in which the cause of action survives. We know of no instance where it has been held that a cause of action which belongs to the class of actions that does not survive either by common law or statute may be changed to an action that survives, by the party to whom the action is given bringing suit in his lifetime. This action cannot be held to survive by the common law, for it is purely a statutory one, which can only be pursued in the mode and within the limitations prescribed by the statute, and under the construction we have given that statute there is no escape from the conclusion that the action does not survive."

We hold that the cause of action for blind relief benefits is personal to the beneficiaries who qualify under the Blind Relief Act, that the personal representatives do not come within the contemplation of the statute, and that the cause of action abated at the death of each blind person and did not survive the deaths of the beneficiaries.

The judgment of the Appellate Court, to the extent it reversed the judgment of the circuit court in favor of Carlos Craig, is affirmed for the reason he has abided by it. In all other respects, the judgment of the Appellate Court and the judgments of the circuit court in favor of the seven administrators and administratrices and against defendant are reversed.

*Judgment of Appellate Court affirmed in part, and reversed in part; judgments of circuit court reversed.*