Sally D. DEAR, Plaintiff and mother, guardian and next friend of R. Cannon Dear and Jeffrey M. Dear (Co-Plaintiffs),

v.

Bertram E. RATHJE et al., Defendants.

No. 72 C 2018.

United States District Court,
N. D. Illinois, E. D.

March 17, 1975.

---

Sally D. Dear, for herself and the co-plaintiffs.

William J. Scott, Atty. Gen. for the State of Ill., and William L. Perlman, and Richard C. Robin, Asst. Attys. Gen., Chicago, Ill., for S. Louis Rathje, Executor of the Estate of Bertram E. Rathje, Judge of the 18th Judicial Circuit, DuPage County, Ill.

Joseph B. Lederleitner, Pretzel, Stouffer, Nolan & Rooney, Chicago, Ill., for James Atten.

John R. Mackay, Corrigan, Mackay, Quetsch & O'Reilly, Wheaton, Ill., for Ralph C. Dear and Phaebe Dear.

## MEMORANDUM OPINION
## AND ORDER

PERRY, Senior District Judge.

Plaintiff Sally D. Dear filed an amended complaint in this case on July 9, 1974 for herself and as mother, guardian and next friend of her minor children, R. Cannon Dear and Jeffrey M. Dear (named as Co-Plaintiffs). The *pro se* complaint names four defendants and charges them with conspiracy and violations of plaintiffs' civil rights, committed under color of state law.

One of the named defendants is Ralph C. Dear, the former husband of Sally D. Dear. It appears from an affidavit of Sally D. Dear filed herein, and otherwise, that she was divorced from Ralph C. Dear in the Circuit Court of DuPage County, Illinois about five years before the time this alleged cause of action arose in August of 1967. Sometime after the divorce Ralph C. Dear married Phaebe Dear, who is also named a defendant in this action. On August 12, 1967 Ralph C. Dear was one of the owners of, and employed at, The Daily Journal, a daily paper published in Wheaton, Illinois. Prior to said August 12th Sally

D. Dear and her two minor children began to picket The Daily Journal at its place of publication, 1 N 320 Schmale Road in Wheaton.

Plaintiffs charge in their amended complaint that defendants Ralph C. Dear, Phaebe Dear, his wife, James Atten, attorney for Ralph C. Dear, and the late Bertram J. Rathje,[1] at the time a judge of the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois, conspired together and under color of law to unlawfully enjoin the plaintiffs from picketing and violated plaintiffs' constitutional rights by depriving them of their right to free speech, due process and equal protection of law, contrary to the First and Fourteenth Amendments to the Constitution of the United States. The complaint seeks damages under Title 42, Sections 1983, 1985 and 1988, of the United States Code.

More specifically, the amended complaint alleges that before a petition was filed for issuance of a Writ of Injunction, "defendant Rathje, signed an order finally adjudicating the cause which, for the benefit of the defendants Dear, enjoined the plaintiffs from picketing the premises of Dear Publication and Radio d/b/a The Daily Journal, in Wheaton, Illinois". It further alleges that at the time the order for injunction was signed, "no petition had been filed, no summons had been issued, no notice had been given, no hearing had been had, and no evidence had been offered, and the defendants, and each of them, knew full well, or should have known, that they were depriving plaintiffs of their rights to free speech and due process of law".

The defendants Dears have joined in a motion to strike and dismiss this action as to them; James Atten also has moved this court to strike and dismiss, and the Executor of the Estate of Bertram E. Rathje, deceased, has sought an order dismissing the amended complaint and action against the Rathje estate. In addition James Atten was given leave to file an affidavit and a short record of the proceedings in the DuPage County Circuit Court out of which this suit arose, including the petition for issuance of the injunction writ, Judge Rathje's order for issuance of the writ, and the injunction writ. Plaintiffs were given leave to file, and Sally D. Dear did file, a counter-affidavit. Plaintiffs also made various motions to strike the motions of the defendants and for other relief.

The court has heard oral argument in this matter on two occasions. Having considered plaintiffs' first amended complaint and all of the motions, responses, exhibits, affidavits, pleadings and arguments of the parties, the court has, under the circumstances, treated defendants motions to dismiss as motions for summary judgment and hereby enters its Memorandum Opinion and Order, which shall stand as its findings of fact and conclusions of law and a final order herein.

There is no difficulty in ascertaining the material facts as there is no controversy over them. It is an undisputed fact that Judge Rathje held court in his usual courtroom in the Circuit Court at Wheaton, Illinois on the morning of August 12, 1967 and that James Atten, acting as attorney for Ralph C. Dear, petitioned the court for issuance of an injunction writ against Sally D. Dear and the two minor children to restrain them from picketing and coming upon the premises of The Daily Journal, where Sally D. Dear's former husband, Ralph C. Dear was employed and in which company he was an officer and part owner. The petition bore the same case number as the original divorce suit. There was a hearing and no notice thereof was given to Sally D. Dear. Judge Rathje then signed an order calling for the issuance of a writ of injunction, commanding Sally Dear, Ralph Cannon Dear and Jeffrey Dear to desist and refrain from "going near or upon the premises" occupied by The Daily Journal and "from

---

1. Subsequently Judge Rathje died and S. Louis Rathje, Executor of the Estate of Bertram E. Rathje, deceased, has been substituted for him as a defendant herein.

picketing or otherwise disturbing or harassing any customers, employees or other persons going to and from defendant's employer, The Daily Journal". Both the petition and order were time-stamped by the Clerk of the 18th Judicial Circuit at 9:31 A.M. on August 12, 1967 and docketed.

Judge Rathje's order directed the issuance of a writ of injunction "forthwith" and the Clerk of the Court then issued the injunction writ on August 12, 1967. In said injunction writ the Clerk erroneously stated that the order, pursuant to which the writ issued, had been entered on August 11, 1967. That same day, August 12, 1967, a copy of the injunction writ was served upon Sally D. Dear by the Sheriff of Du-Page County through one of his deputies.

Sally D. Dear did not move or petition Judge Rathje to vacate or modify the injunction order; instead, three days later on August 15, 1967, she filed a notice of appeal to the Appellate Court of Illinois, Second District; and she thereafter perfected said appeal. Ralph C. Dear did not appear before the Appellate Court and was defaulted.[2] Defendants are not charged with taking, nor did they take, any action after the Appellate Court's order of reversal.

Defendants Ralph C. and Phaebe Dear are not charged with being officials of the State of Illinois or any of its subdivisions. Nor is James Atten charged with being an officer of the State of Illinois or any of its subdivisions except by virtue of the fact that he was an attorney at law, representing Ralph C. Dear. None of these said defendants are charged with holding himself or herself out as being officers of the State of Illinois or any subdivision thereof except the late Bertram E. Rathje, as a judge, and James Atten, as an attorney at law representing Ralph C. Dear.

Defendants contend that none of the counts in the amended complaint alleges those facts upon which relief can be granted. Although Judge Rathje is charged with being an official of the State of Illinois and acting under color of law, defendants in their motions and argument contend that Judge Rathje acted toward plaintiffs in his judicial capacity and within his jurisdictional authority, pursuant to a request for an injunction, and that this cause having been brought under the Civil Rights Acts of 1871 is barred as to him by the doctrine of judicial immunity. Defendants also argue that James Atten was not an officer of the State of Illinois or any subdivision thereof; that he was a private attorney representing litigant Ralph C. Dear; that as a private attorney he was only a limited officer of the court, solely for the purpose of aiding the court in carrying out the court's order; and that, therefore, whatever he did he did as a private attorney representing Ralph C. Dear and not as an officer of the court within the meaning of 42 U.S.C. § 1983. Defendants Ralph C. Dear and Phaebe Dear are private citizens. Defendants also contend that they did not conspire to deprive plaintiffs of their rights under 42 U.S.C. § 1983 for the reason that Ralph C. Dear and his attorney only exercised a legal right to file a petition before the Circuit Court in a legal manner and that such exercise of a legal right cannot be a conspiracy. Defendants further contend that there is no jurisdiction over them under 42 U.S.C. § 1988.

## I

■ The court will first consider the defense of judicial immunity. This is not a case where a judge went out of

---

2. James Atten states in his affidavit filed herein that: "Due to lack of financial ability to defend all of the many judicial proceedings which the plaintiff has commenced, the defendant did not appear and defend the injunction in the Appellate Court. . . . "

The Appellate Court of Illinois, Second District, in its opinion stated that: "The defendant filed no brief or other documents in response to the appeal, and neither party offered oral argument."

the courthouse where he normally conducts judicial hearings and interfered with the rights of plaintiffs. To the contrary, Judge Rathje held court in his usual courtroom in the courthouse at Wheaton on the morning of August 12, 1967 and entertained the petition of Ralph C. Dear, by his attorney James Atten. He considered a verified petition and granted an injunction restraining Sally D. Dear from taking the minor children of herself and Ralph C. Dear and picketing The Daily Journal. These foregoing actions of the defendants, as charged by the plaintiffs and shown by the record to be true, constituted a lawful procedure and were not a violation of any civil rights of plaintiffs. Even if Judge Rathje erred, there is no cause of action against him for the reason that he was acting in his judicial capacity and, therefore, was immune from such a suit for damages.

■ Judicial immunity has long been firmly established in our judicial system. Every act performed by a judge in his judicial capacity is immune from damage suits by litigants. A litigant's sole remedy is by way of appeal. Since the decision of the United States Supreme Court in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the United States Courts of Appeals have consistently held that judicial immunity is a complete defense under 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, n. 9, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), citing Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966) and cases cited therein. The doctrine of judicial immunity was similarly discussed and upheld in Pierson v. Ray, *supra*. There a municipal police justice had convicted and sentenced defendants to jail. One of the defendants appealed; and after the City produced its evidence the court granted his motion for a directed verdict. Although the cases against the other defendants were dropped, they brought an action for damages in the federal court, where a jury found for respondents. On appeal, the Court of Appeals held, *inter alia,* that the respondent police justice

had immunity for his judicial acts under both § 1983 and the state common law. In *Pierson,* the Supreme Court said:

We find no difficulty in agreeing with the Court of Appeals that Judge Spencer is immune from liability for damages for his role in these convictions. The record is barren of any proof or specific allegation that Judge Spencer played any role in these arrests and convictions other than to adjudge petitioners guilty when their cases came before his court. [Footnote omitted]. Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868), quoted in Bradley v. Fisher, *supra,* 13 Wall. 349, note, at 350.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

We do not believe that this settled principle of law was abolished by § 1983, which makes liable "every person" who under color of law deprives another person of his civil rights. The legislative record gives no clear indi-

**6**

cation that Congress meant to abolish wholesale all common-law immunities. Accordingly, this Court held in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), that the immunity of legislators for acts within the legislative role was not abolished. The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have specifically so provided had it wished to abolish the doctrine. [Footnote omitted].

The Court of Appeals for the Seventh Circuit has long recognized the judicial immunity doctrine for damage suits. Byrne v. Kysar, 347 F.2d 734, 736 (7th Cir. 1965), cert. denied 383 U.S. 913, 86 S.Ct. 902, 15 L.Ed.2d 668, reh. denied, 384 U.S. 914, 86 S.Ct. 1348, 16 L.Ed.2d 367; Jones v. Jones, 410 F.2d 365, 366 (7th Cir. 1969); Brown v. Dunne, 409 F.2d 341 (7th Cir. 1969); Jacobson v. Schaefer, 441 F.2d 127, 129 (7th Cir. 1971), citing with approval Berg v. Cwiklinski, 416 F.2d 929 (7th Cir. 1969), reh. denied.

The doctrine of judicial immunity is so well settled that it can no longer be questioned and neither Judge Rathje nor defendant S. Louis Rathje, Executor of the Estate of Bertram E. Rathje, deceased, can be held liable herein.

■ Although Judge Rathje's order was reversed by the state appellate court, it is well established that a judge will not lose his immunity because of a mere error in judgment even if the resultant act be in excess of the court's jurisdiction. Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). Judge Rathje, pursuant to a verified petition filed by defendant Ralph C. Dear, acted under the auspices of the Injunction Act, Ill.Rev.Stat., 1967, Ch. 69, § 9. The proviso whereby the court "for good cause shown" may grant the injunction without bond was deleted by amendment five days prior to the filing of the petition. It can be argued from either the old or new Injunction Act, however, that previous notice to the defendant is not necessary before the granting of an injunction if it appears from the verified complaint or affidavit accompanying same that the rights of the petitioner would be unduly prejudiced if the injunction is not issued immediately or without notice. It is not necessary for a judge to satisfy himself that notice was given previous to the granting of the injunction if it appears from specific facts shown in a verified petition that immediate and irreparable injury, loss or damage would result to the applicant before notice can be served and a hearing had thereon.

It appears to this court from a reading of the state appellate court opinion that the court disagreed with Judge Rathje's analysis of the reasons presented by Ralph C. Dear in the petition for injunction and found them insufficient to sustain an injunction without notice or bond. The court in its opinion said, "[H]aving concluded that the granting of the injunction without notice or bond was improper, on the facts before us, we find it unnecessary to discuss the alternative theories advanced by the plaintiff for reversal". It appears elsewhere in the opinion that one of the "alternative" theories advanced was that the lower court had no jurisdiction to order the injunction. The court stated that the defendant filed "no brief or other documents in response to the appeal, and neither party offered oral argument".

In Robinson v. McCorkle, 462 F.2d 111, 113 (3rd Cir. 1972) the court held, *inter alia*, that even if the plaintiff therein had been committed under a repealed statute (providing for summary commitments), such judicial miscue did not remove the shield of judicial immunity. There the court said:

The judicial immunity doctrine also sustains the dismissals. Assuming *arguendo* that Philip Robinson was committed under a repealed statute, such judicial miscue does not remove the shield of immunity. Judge Whipple properly pointed to the essential distinction between "clear absence of ju-

risdiction" and "excess of jurisdiction." (citations omitted)

■ It is a universally accepted principle that a judge is not liable in damages resulting from an order entered on a judgment rendered in an action or proceeding over which the court has jurisdiction of the subject matter and the parties, even though such an order is in excess of the vested jurisdiction or otherwise erroneous and is set aside or reversed on appeal or other review. Ryan v. Scoggin, 245 F.2d 54, 58 (10th Cir. 1957) and authorities cited therein. In Ryan v. Scoggin, the court held:

. . . It is only in instances in which a judge acts or proceeds in the clear absence of any color of jurisdiction or proceeds officially in respect to a cause or matter over which the court is clearly without any color of jurisdiction that he may be subjected to personal liability as a trespasser for damages arising out of his unauthorized act. [citing cases]

It is true that the order of Judge Rathje was held, on appeal, to have been erroneous. But he was performing a judicial act when he caused the order to be entered and the order was entered in a cause over which the court had jurisdiction. Therefore, the rule of judicial immunity from personal liability in damages arising out of the entry of such an order applies. A judge must be free to act upon his own convictions without apprehension of personal consequences to himself. Bradley v. Fisher, *supra*. If a judge did not have judicial immunity he would be personally liable in damages for making a decision with which an appellate court disagrees as to the trial judge's analysis of the facts. The court concludes that the amended complaint herein does not state a cause of action against the late Bertram E. Rathje, deceased, for the reason that the acts performed by him were performed within his capacity as a Circuit Judge, thereby cloaking him with immunity.

■ Plaintiffs' claim against the late Judge Rathje is in the nature of a defa-

mation action which abates upon the death of the defendant and cannot thereafter be maintained by suit against his estate. The death of defendant Bertram E. Rathje was spread of record. Whether or not plaintiffs' action survives will have to be determined by Illinois law. See Davis v. Johnson, 138 F.Supp. 572 (N.D.Ill.1955); Holmes v. Silver Cross Hospital, 340 F.Supp. 125 (N.D.Ill. 1972).

■ The Illinois legislature has specifically excepted slander and libel from actions which survive. The Probate Act, Ch. 3, § 339, Ill.Rev.Stat.1967. The Illinois Supreme Court held in Tunnell v. Edwardsville Intelligencer, Inc., 43 Ill.2d 239, 252 N.E.2d 538 (1969) that at common law a cause of action for a purely personal injury did not survive the death of either the injured party or the wrongdoer and that actions for libel and slander based on injury to reputation were clearly of the sort which did not survive. While § 339 of the Probate Act has reversed the general rule with regard to the abatement of actions for personal injury, actions for slander and libel are specifically excepted from the statute and remain subject to the common law rule. Plaintiffs' allegations regarding Judge Rathje characterize defamatory injuries. In paragraph 24 of plaintiffs' amended complaint (set forth fully on page 9 of this memorandum opinion and order), it is alleged that "plaintiffs were . . . greatly disgraced . . . by these legal proceedings; . . . greatly injured in their . . . good name, fame and reputation . . . and will in the future . . . lose large sums of money by reason of being greatly humiliated . . ." The foregoing allegations sound in defamation. See Prosser, Torts (3d ed.), p. 756. The instant action thus falls within the "slander and libel" exception; hence it does not survive the death of Judge Rathje.

## II

It has long been held that a lawyer who represents a client as an attorney and is not a party in interest does not

act under color of law within the meaning of the Civil Rights Acts. It was specifically so held by the United States Court of Appeals for the Seventh Circuit in Skolnick v. Martin, 317 F.2d 855 (1963) and Skolnick v. Spolar, 317 F.2d 857 (1963) (companion cases). In each of these cases Sherman Skolnick had joined attorneys who had participated in the trial of state court litigation with other defendants upon the ground the lawyers were acting under color of law as officers of the State of Illinois. The Honorable John S. Hastings, then Chief Judge of the Court of Appeals for the Seventh Circuit, speaking for a unanimous panel in Skolnick v. Martin, *supra,* held:

> Lawyers who participate in the trial of private state court litigation are not state functionaries acting under color of state law within the meaning of the Federal Civil Rights Acts. Cooper v. Wilson, 6 Cir., 309 F.2d 153 (1962); Swift v. Fourth National Bank of Columbus, Georgia, D.C.M.D. Ga., 205 F.Supp. 563 (1962).

Since that time the same court has consistently so held. Sarelas v. Porikos, 320 F.2d 827, 828 (7th Cir. 1963), cert. denied 375 U.S. 985, 84 S.Ct. 519, 11 L. Ed.2d 473; Byrne v. Kysar, *supra,* 347 F.2d at 736; Brown v. Dunne, 409 F.2d 341 (7th Cir. 1969); Jones v. Jones, 410 F.2d 365, 366 (7th Cir. 1969), cert. denied 396 U.S. 1013, 90 S.Ct. 547, 24 L. Ed.2d 505. Moreover, in both Brown v. Dunne, *supra,* and Jones v. Jones, *supra,* the court held that it is improper for judges and attorneys who are not parties in interest to be joined with the other parties defendant.

■ Since Judge Rathje was clothed with judicial immunity, since James Atten was acting as a private attorney and not acting under color of law, and since Ralph C. and Phaebe Dear were private citizens, there is lacking here the required element of action under color of state law. The two counts of plaintiffs' complaint based upon 42 U.S.C. § 1983 must be dismissed for failure to state a claim upon which relief may be granted.

III

■■ Count II of the amended complaint alleges a conspiracy to deprive plaintiffs of their constitutional rights and is brought pursuant to 42 U.S.C. § 1985(3). Plaintiffs therein simply allege in some general way that the defendants conspired and induced Judge Rathje to enter the injunction order. Not only are the conspiracy allegations unsupported by any specific fact but they also fail to make sufficient showing that plaintiffs were denied equal protection of the law. Such general allegations do not state a cause of action under § 1985(3). Although action under color of state law is not a requirement of the section, Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), plaintiffs here do not allege the requirement, mandated in *Griffin,* that the motivation for the asserted deprivations be based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action". As the Supreme Court held many years before in Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), a conspiracy charge based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes of individuals. In that case the Court said:

> The lack of any allegations in the complaint here, tending to show a purposeful discrimination between persons or classes of persons is not supplied by the approbrious epithets "willful" and "malicious" . . .

Snowden v. Hughes, *supra,* and Griffin v. Breckenridge, *supra,* are cited in Robinson v. McCorkle, *supra,* at page 113 of 462 F.2d 111, where the court held that a dismissal in favor of the judge, borough attorney and clerk, on the basis of the pleadings, cannot be faulted. There the court said:

> . . . Not only are the conspiracy allegations unsupported by any specific facts, but the complaint fails to make a sufficient showing under 42 U.S.C. 1985(3) that Philip Robinson

was denied equal protection of the law. With near unanimity the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). "A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals. Snowden v. Hughes, 321 U.S. 1, 64 S. Ct. 397, 88 L.Ed. 497 (1944); Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959); Colon v. Grieco, 226 F.Supp. 414 (D.N.J.1964); Selico v. Jackson, 201 F.Supp. 475 (S.D.Cal.1962)." Daly v. Pedersen, 278 F.Supp. 88 (D. Minn.1967); Weise v. Reisner, 318 F.Supp. 580, 583 (E.D.Wis.1970). Cf. Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970)

Of course many litigants believe they have been deprived of some constitutional rights, but mere allegations unsupported by facts do not state a cause of action. Plaintiffs have alleged, *inter alia,* in their amended complaint that they have suffered great emotional distress. In paragraph 24 thereof, they have alleged:

24. As a direct and proximate result of the aforesaid acts of the defendants, plaintiffs were compromised and restricted in the exercise of freedom of speech; denied due process and the equal protection of laws; and *greatly* disgraced and *upset* by these illegal proceedings; *terrified and in fear* of their personal safety and freedom; put to great expense of time and effort and money in prosecuting appeal of said illegal injunction entered without jurisdiction; *greatly injured in their feelings,* good name, fame, and reputation, and hindered and intimidated in the exercise of free speech. They *suffered and still suffer, and will continue to suffer great mental pain, anguish,* and *shock;* and will in the future, as in the past, lose large sums of money by reason of being *greatly humiliated,* intimidated, and deprived of their constitutional rights

as a result of the foregoing acts of the defendants, and each of them. [emphasis added]

Claims of emotional distress have been held not actionable under §§ 1983 and 1985(3). Robinson v. McCorkle, *supra.* Nor do the Fourteenth Amendment of the United States Constitution and the Civil Rights Acts assure uniformity of decisions or immunity for merely erroneous action. In Smith v. Village of Lansing, 241 F.2d 856 (7th Cir. 1957), plaintiff had charged two village officials and a private citizen with conspiring to bring about a state court decree requiring plaintiff to demolish a building. In that case the court said:

. . . It is not asserted that they acted "under color of law" but that in some way they prevailed upon the Village to bring suit against the plaintiff herein. Of course, many litigants who are unsuccessful believe that they have been deprived of some constitutional rights, but the Fourteenth Amendment of the United States Constitution and the Civil Rights Act do not "assure uniformity of decisions or immunity from merely erroneous action * * *." Snowden v. Hughes, 321 U.S. 1, 15, 64 S.Ct. 397, 404, 88 L.Ed. 497, opinion by Frankfurter, Justice. If the plaintiff is entitled to maintain this suit in the Federal Courts, the doors will be open for every unsuccessful litigant in State Court proceedings to demand that the Federal Courts be arbiters of the correctness of State Court decisions and judgments. Bottone v. Lindsley, 10 Cir., 170 F.2d 705, 707.

241 F.2d at 859.

Plaintiffs having failed to state a claim upon which relief can be granted under either § 1983 or § 1985(3) of Title 42 U.S.C., § 1988 is not applicable.

This action is nothing more than an aftermath of a domestic controversy between plaintiff and her former husband. Plaintiff made Ralph C. Dear's new wife a defendant but made no allegations against her, merely charging that she

was a conspirator. Plaintiff Sally Dear had her remedy. She appealed to the Appellate Court of Illinois and was successful. The most that plaintiffs now here allege is a cause for malicious prosecution, a cause which Sally Dear did not pursue and of which this court has no jurisdiction.

Having found and concluded that the amended complaint filed herein fails to state a claim upon which civil relief can be granted, the motions of each and every one of the defendants to dismiss (treated as motions for summary judgment, as aforesaid) are hereby granted. Even if the amended complaint stated a cause of action, the undisputed affidavit of James Atten coupled with the record of the proceedings before the late Judge Bertram E. Rathje in open court require the court to find that plaintiffs have no cause of action, to grant a summary judgment and to dismiss this cause.

It is, therefore, Ordered, that the plaintiffs take nothing; that this cause be and it is hereby dismissed, and that defendants be and they are hereby awarded costs herein.