**Jerry R. JOHNSON and Judith J. Johnson, Plaintiffs,**

v.

**HOUSEHOLD FINANCE CORPORATION, Defendant.**

**No. 78–1040.**

United States District Court, S. D. Illinois, N. D.

July 21, 1978.

---

DeWayne Morrison, Galesburg, Ill., for plaintiffs.

Harry C. Bulkeley, Galesburg, Ill., for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

The initial issue which the court must face in this action under TILA, 15 U.S.C. § 1601 et seq., is the question whether a suit for violation of the Act survives the death of a deceased plaintiff.

The complaint alleges that plaintiffs borrowed money from defendant on March 16, 1977, and on November 10, 1977, and that the disclosures made to plaintiffs in each loan context violated TILA. The complaint was filed on March 10, 1978 by Jerry R. Johnson and Judith J. Johnson as co-plaintiffs. Judith Johnson died within several days after the complaint was filed.

Defendant filed a motion to dismiss the complaint as to the latter plaintiff because of her death. Counsel for plaintiff responded to that motion by a motion by the ad-

ministrator of Judith's estate for substitution as a party plaintiff.[1]

After reviewing pertinent authorities, the motion to dismiss the complaint as to Judith J. Johnson must be allowed.

The threshold question must be a determination as to the applicable law governing the issue, i. e., whether federal or state.

■ Plaintiff relies upon the statement in *Murphy v. Household Finance Corp.*, 560 F.2d 206, 208 (6th Cir. 1977), that the question of survivability of a TILA action is a matter of federal law. However, the more persuasive authorities hold that the question of survivability must be determined by the application of state law. *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961), *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136; *Dear v. Rathje*, 391 F.Supp. 1, 7 (N.D. Ill.1975);[2] *Holmes v. Silver Cross Hospital of Joliet, Illinois*, 340 F.Supp. 125, 128–129 (N.D.Ill.1972); *Davis v. Johnson*, 138 F.Supp. 572 (N.D.Ill.1955). In *Holmes*, the court said that, absent any specific congressional enactment on the subject, "state law in relation to survival of actions must be ascertained and adopted as the law governing the issue of survival of" an action under the federal Civil Rights Act.[3] 340 F.Supp. at 129. In *Dear, supra*, the court, applying Illinois law, held that a purely personal cause of action did not survive the death of a party.[4]

The Illinois survival statute provides:

"In addition to the actions which survive by the common law, the following

also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, actions against officers for misfeasance, malfeasance, or nonfeasance of themselves or their deputies, actions for fraud or deceit, and actions provided in Section 14 of Article VI of 'An Act relating to alcoholic liquors.'" Ill.Rev.Stat.1977, ch. 110½ § 27–6.

Defendant principally relies upon *Creighton v. County of Pope*, 386 Ill. 468, 54 N.E.2d 543 (1944), to support its position that the cause of action does not survive the death of Judith. *Creighton* was a suit by an administrator to recover statutory benefits which allegedly had accrued to the decedent prior to his death. In holding that the cause of action did not survive, the court said that a cause of action created by statute does not survive unless survival of the action is mandated by the same statute or another statute of the state. *Ibid.* at 476, 54 N.E. 543. *Creighton* was recently cited and followed in *Shapiro v. Chernoff*, 3 Ill.App.3d 396, 279 N.E.2d 454, 457 (1st Dist. 1972).[5]

Plaintiffs place principal reliance upon *McDaniel v. Bullard*, 34 Ill.2d 487, 216 N.E.2d 140 (1966), as overruling, by implication, the *Creighton* principle that a cause of action created wholly by statute does not survive. They misconstrue *McDaniel*. In that suit under the wrongful death act, a

---

1. The bona fides of the administrator are not exemplified. The motion merely states that the moving party was duly appointed by a state court. Since that recital in the motion is not contested by defendant, the motion is accepted as accurately stating the salient facts.

2. Solely as a statement of historic perspective, *Dear* was affirmed, without opinion. 532 F.2d 756 (7th Cir. 1976). However, because of the provisions of Rule 35 of the Court of Appeals for the Seventh Circuit, that historical fact is deemed to have no precedential impact upon the question now before the court.

3. The suit arose under 42 U.S.C. § 1983.

4. *Dear* was a suit under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, 1988. The Defendant Rathje died prior to a trial of the cause. Applying Illinois law, the court held that the cause of action did not survive the death of that party.

5. To the same effect as *Creighton*, *Wilcox v. Bierd*, 330 Ill. 571, 583–585, 162 N.E. 170 (1928), held that a wrongful death action, being wholly statutory, did not survive the death of the sole beneficiary of the wrongful death claim.

suit was filed on behalf of the sole beneficiary of the decedent for injury to her means of support. About nine and one-half months after the fatal incident, the sole beneficiary died from causes unrelated to the fatal injury. The trial court then dismissed her pending complaint. In reversing that dismissal and remanding the cause, the court criticized its prior decision in *Wilcox v. Bierd, post*, n. 6. The court's decision rested upon its definition of "personal property" as that term was employed in the then Illinois survival statute. Ill.Rev.Stat. 1963, ch. 3, § 339.[6] The court held that the claim under the Wrongful Death Act created an accrued property right in the sole beneficiary during her lifetime, and that that accrued right did not abate as the result of her untimely death. The court also recognized that it was dealing with a statutory right which was "strictly compensatory." 216 N.E.2d at 143. The *Creighton* decision was not mentioned by the court.

Later opinions by the Illinois courts are found in *Jones v. Siesennop*, 55 Ill.App.3d 1037, 13 Ill.Dec. 800, 803, 371 N.E.2d 892, 895 (1st Dist. 1977), which held that a professional negligence suit against an attorney, which had the effect of jeopardizing the title to real estate, did survive the death of the plaintiff, and *Hogan v. Braudon*, 40 Ill.App.3d 352, 352 N.E.2d 303, 304 (2d Dist. 1976), which held that a suit to foreclose special assessment liens against real estate did survive the death of the original plaintiff in the cause of action.

■ It appears that *McDaniel* and subsequent cases do ameliorate the Illinois rule of survivability to the extent that a court must determine whether there was, prior to

death, an injury to some compensatory property right of the deceased party, which, if unredressed, would have the effect of decreasing the value of his estate. None of these decisions can be construed as derogating from the *Creighton* principle that a wholly personal, statutory right does not survive.

■ The critical issue thus becomes the question whether abatement of this suit would fail to recognize an accrued compensatory property right of Judith Johnson at the time of her death. The answer must be no.

In the context of this issue, it seems necessary to precisely define and categorize the TILA claim. Although this court is not concerned with the issue in *Murphy, supra*, and *Porter v. Household Finance Corp.*, 385 F.Supp. 336 (S.D.Ohio 1974), upon which *Murphy* substantially relied, we yet must be concerned with the reasoning of those cases which equated the issue therein faced with the question whether a TILA claim does survive the death of a party.[7] One must question the reasoning which led each of those courts to a determination that a TILA claim would survive the death of the potential claimant.

*Murphy*, in particular, and *Porter*, to a lesser degree, placed great emphasis upon *Huntington v. Attrill*, 146 U.S. 657, 666–667, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), which equated the concepts of the words "penal" and "penalty" with the common law concept that those terms were limited to forfeitures, either corporal or monetary, to the state for offenses committed against the state as such. This court would not

---

**6.** *Wilcox* arose from unusual circumstances which appear to have had no bearing upon the decision. An entire family was killed instantly in a collision, with the exception of one young child who succumbed to injuries sustained in the collision after an additional period of some thirty minutes. However, the tenor of the court's opinion would give no consideration to that unique situation. The court construed the term "personal property" as limited to cash, chattels, etc., which could be seen, touched,

moved and/or carried away, to the exclusion of any intangible personal property. The *McDaniel* court stated that the *Wilcox* concept of "personal property" was an outmoded concept, out of touch with the twentieth century. 216 N.E.2d at 142–143.

**7.** Both cases dealt with the question whether a TILA claim was an asset in the hands of a trustee in bankruptcy.

take the position of ignoring, criticizing, or evading *Huntington*, but we cannot ignore reality. When the court spoke in the nineteenth century, the social legislation, which was enacted as an aftermath of the Civil War, were words in a book which were to be largely ignored and forgotten by litigants, attorneys, and courts until the same were unearthed many decades later. Query, and only the Supreme Court can ultimately answer the question—can *Huntington* have any significance after more than eight decades, which were tempered by four major wars, and the technology and public consensus generated by those wars, and other factors? We think not. The *Huntington* concept requires one to retrogress to an era in which a stark distinction between civil and criminal law existed both in government and in popular thinking, unaffected by the mass of twentieth century regulatory legislation which has blurred that clear distinction.

Both *Murphy* and *Porter* sought to find an analogy between the treble damage provisions of the Sherman Act, the patent laws, and the Securities Exchange Commission Act and TILA.[8] In this court's view, that analogy is misplaced. Each of those statutes creates a civil cause of action which is grounded upon the proof of monetary damage. For example, the treble damages provision of the Sherman Act is meaningless to the litigant who proves that his actual damages, occasioned by a Sherman Act violation, were zero. This plaintiff asserts the same analogy, but in the court's view the analogy will not wash.

It appears to this court that its appraisal of *Huntington* is fortified by the one TILA decision of the Supreme Court. *Mourning v. Family Publications Service, Inc.*, 411

U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Reference here is to the language of the court that Congress placed the principal enforcement burden upon the consuming public by enacting a provision for a civil penalty. 411 U.S. at 376, 93 S.Ct. 1652. *Murphy* quotes, in part, the applicable language, but emphasizes the statement that the civil penalty "is modest" and that the Act should not be so narrowly construed as a criminal statute must be construed. In our view, *Murphy* failed to consider the issue with which the Court was concerned in *Mourning.* Review was upon a challenge to the constitutionality of the Act and of Regulation Z, which was alleged to constitute an unconstitutional usurpation of Congressional power by the Federal Reserve Board.[9] *Mourning* must be construed as holding that TILA does involve a civil penalty.

The conclusion that the Act is penal, in the true sense of that word, is compelled by the language of the statute itself. Congress elected the device of private litigation as the principal instrument for its enforcement. To be sure, a party may recover actual damages, but actual damages are not a necessary allegation of complaint.[10] It is only necessary to allege that the Act was violated, to state a claim for recovery of the penalty. Although the penalty may be modest by comparison with the potential penalty imposed by criminal statutes, it can hardly be described as modest in relation to the individual cause. Double the amount of the finance charge, up to a maximum of $1,000, is a substantial penalty in relation to the individual loan. The $100 minimum appears also to have been devised as a lever to promote enforcement action, inasmuch as the finance charge upon many small loans would be below the amount of $50, which,

---

8. Not to mention the Emergency Price Control Act engendered by World War II. *See Bowles v. Farmers National Bank of Lebanon*, Ky., 147 F.2d 425 (6th Cir. 1945).

9. In pertinent part, the Court said: " * * * Since the civil penalty is modest, * * * we need not construe this section as narrowly as a

criminal statute providing graver penalties, such as a prison term."

10. The court cannot recall a single complaint in which it was alleged that actual damages were involved among the innumerable complaints which have come before this court.

by doubling, would equal that minimum. The minimum itself may lead to any multiplier greater than two in a substantial number of potential claims.

It must be concluded that we are dealing with a statutory cause of action for a civil penalty. That cause does not survive the death of the plaintiff under the *Creighton* principle.

That conclusion is not changed by plaintiffs' verbal gymnastics designed to touch all bases for survival provided by the Illinois Act.

This action does not arise out of a contract. The Act expressly provides that it does not affect the validity or enforcibility of any contract or obligation. 15 U.S.C. § 1610(a). The suit for a TILA penalty is not concerned with the underlying contract, but only with the enforcement of disclosure requirements related to that transaction. *E. g., Sellers v. Wollman,* 510 F.2d 119, 122 (5th Cir. 1975).

There is no merit to plaintiffs' argument that this is an action to recover for injury to real property, despite the fact that the complaint does allege that a second mortgage on real estate was delivered as security for the second loan. That contention is wholly refuted by the fact that the complaint does not allege any actual damages.

In like manner, the complaint does not allege fraud. There is nothing to support the argument that the cause survives as an action for fraud or deceit.

■ The most fanciful argument is the assertion that the cause survives as an action for malfeasance, misfeasance, or nonfeasance of a state officer. The contention that defendant is an officer of the state, because it is licensed by the state and is subject to state regulation, appears to the court so fantastic that it cannot be believed

that the argument was seriously advanced. Under the special circumstances which prevailed in *Holmes v. Silver Cross Hospital,* 340 F.Supp. 125 (N.D.Ill.1972), the court did hold that a hospital and doctors who had obtained the appointment of a conservator to consent to blood transfusions, after the refusal of an injured person and his family to consent, on religious grounds, to such procedure, had acted under color of state law. The impact of *Holmes* must be confined to the factual circumstances of that case. It certainly cannot be construed to support the theory that every person who is licensed by the state is a state officer.

The decision reached upon the question of survival does not derogate from the proposition that TILA is to be liberally construed to effectuate its purposes. *E. g., Murphy, supra* at 210, and cases there cited. The Act is remedial in its purpose, which does require liberal construction, including the stern imposition of penalties when a violation of the Act is shown. However, the necessary recognition that the Act is penal in effect is wholly consistent with the above principle.[11]

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant has also moved for summary judgment. That motion must be allowed as against plaintiff Jerry R. Johnson.

■ The complaint alleges that the disclosures made failed to disclose "the amount of credit" of which the debtors will have the beneficial use, and that the disclosures were not made in meaningful sequence. We resolved those issues against the plaintiff's position in *DeJaynes v. General Finance Corporation,* 442 F.Supp. 377 (S.D.Ill.), and *Rounds v. Household Finance Corporation,* No. 77–1083 (S.D.Ill.). Sum-

---

11. We reiterate the fact that the analysis herein is not concerned with the issue which was before the court in both *Murphy* and *Porter.* The question whether a TILA claim is an asset in the hands of a trustee in bankruptcy under

Section 70(a)(5) of the Bankruptcy Act, 11 U.S.C. 110(a)(5), is not considered by the court in this opinion, nor has the court made any determination as to the effect, if any, which this opinion might have upon that issue.

mary judgment will be entered for the defendant on authority of those decisions.

The third and final charging allegation states that the defendant obtained a second mortgage upon the debtors' residence in connection with the November 10, 1977 loan, and failed to disclose that fact. That allegation has no merit.

The printed disclosure form has three printed boxes situated adjacent to each other near the top thereof, in which there is, respectively, printed, reading from left to right, "Chattel Mortgage," "Wage Assignment," and "Real Estate Mortgage." The typed word "Yes" appears within the boxes labeled "Chattel Mortgage" and "Wage Assignment." The typed word "Yes" appears for the third time in that section, partly in and partly out of the box labeled "Real Estate Mortgage." That word is interposed across the line which separates the center box from the box furthest to the right of the form.

The security disclosure states, in part, "If 'Yes' appears under 'Real Estate Mortgage' above, there is a mortgage on the real estate belonging to the borrowers which is located at their address stated above, * * *."

It is obvious that the failure to place the word "yes" wholly within the box is a typographical error. Yet, the disclosures made are clear. It is obvious to any person that the third "yes" which was partly within the "Real Estate Mortgage" box did signify that a real estate mortgage was obtained. It is also wholly consistent with the agreed transaction, wherein a wage assignment, a chattel mortgage, and a second mortgage on real estate were obtained as security for that loan.

In *Carter v. Credithrift*, No. 77–1152 (S.D.Ill.), this court held that no TILA violation occurred simply because an obvious typographical error intervened, when that error did not render the disclosures made inaccurate. The same holding is warranted here.

IT IS ORDERED, therefore, that the complaint is dismissed as to plaintiff, Judith J. Johnson, that summary judgment is entered for the defendant against the plaintiff, Jerry R. Johnson, and that defendant recover its costs of suit.