510 F.2d 119
 29 A.L.R.Fed. 899
 Isabella SELLERS, wife of/and Lawrence Paul Randall, et al.,
Plaintiffs-Appellees-Cross-Appellants,
v.
Morton WOLLMAN, Individually and as President of Tri-State
Contracting Co., et al.,
Defendants-Appellants-Cross-Appellees.
 No. 73--3953.
 United States Court of Appeals,
Fifth Circuit.
 March 24, 1975.
 
 Richard J. Boutall, Metairie, La., for defendants-appellants.
 Bernette Joshua Johnson, Joseph W. Thomas, New Orleans, La., for plaintiffs-appellees.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before AINSWORTH, GODBOLD and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 The plaintiffs below, Isabella and Lawrence Randall, Daisy and Jeffie Hookfin, and Earline and Edward DeGree sued Morton Wollman and his corporation, Tri- State Contracting Co., Inc. (Tri-State)[1] for statutory damages and costs and attorney's fees for violations, arising out of contracts for the repair and remodeling of their homes, of the Federal Consumer Protection Act, Title 15, U.S.C., Secs. 1601 et seq., popularly referred to as the Truth-in-Lending Act, and Regulation Z, 12 C.F.R., Sec. 226, promulgated pursuant to Title 15, U.S.C., Sec. 1604. The complaint charged that the defendants failed to notify them of their right to rescind, required by Sec. 1635 in situations where a security interest will be acquired on the consumer's residence, and failed to disclose the annual percentage rate on the credit extended them, as required by Title 15, U.S.C., Sec. 1638. Although the DeGrees exercised their statutory right to rescind, they sought a damage award of $300 for aggravation of a nervous condition suffered by Mrs. DeGree as a result of their attempt to cancel the contract.[2] The Randalls and Hookfins asserted unawareness of their right to rescind at the time of signing the contracts and sought rescission and $600 and $800 monetary damages, respectively, for structural damage allegedly caused to their homes by the defendants in the performance of the contracts.[3]
 
 
 2
 Tri-State and its president Wollman counterclaimed against the Randalls for work done under the remodeling contract alleging satisfactory performance, for recovery of the contract price and 20% attorney's fees as the contract provided. The Randalls interposed two defenses; (i) that the contract was illegal for failure to obtain the building permit required by New Orleans City Ordinance 17, 525, C.C.S., in Part III, Ch. 2, Art. 201; and (ii) that it was void because defendants fraudulently misrepresented that the Randalls would be reimbursed for the work by the Community Improvement Agency.[4]
 
 
 3
 The district judge after a bench trial entered judgment for the Randalls for $600 and costs, for the Hookfins for $800 and costs, dismissed the DeGree complaint at their cost for failure to prove any monetary loss, and denied plaintiff's request for an award of attorney's fees. The defendants' counterclaim was not mentioned in the judgment. No findings of fact and conclusions of law were filed in support of the judgment, as required by Rule 52(a), F.R.Civ.P.
 
 
 4
 Both sides have filed appeals, plaintiffs asking an increased monetary award and reversal of the denial of attorney's fees, and Wollman and Tri-State seeking favorable consideration of their counterclaim.
 
 
 5
 In the absence of findings and conclusions we are left to speculation as to the basis for judgment, necessitating vacation and remand for compliance with Rule 52(a).
 
 
 6
 The purpose of that rule iterated by the courts and unnecessarily frustrated in this case,
 
 
 7
 'is to aid the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court'. 2B Barron & Holtzoff, Federal Practice & Procedure Sec. 1121, p. 481 (Wright ed. 1961); see 5 Moore, Federal Practice Sec. 52.06(1), p. 2653 (1964).
 
 
 8
 S.S. Silberblatt, Inc. v. United States of America, for Use and Benefit of Lambert Corp., 5 Cir. 1965, 353 F.2d 545, 549. The disagreement of the parties as to the basis for the district court's judgment demonstrates the insurmountable difficulties facing a court attempting the review of a judgment lacking the necessary undergirding of findings and conclusions.
 
 
 9
 The homeowner appellees assert that the district court granted rescission and actual damages but erroneously failed to award statutory damages under Title 15, U.S.C., Sec. 1640. They contend that attorney's fees, authorized by Sec. 1640(a)(2), were refused solely because their attorney was salaried by legal aid, an improper ground for denial under the developing case law in this field and under related statutes. See Jones v. Seldon's Furniture Warehouse, E.D.Va.1973, 357 F.Supp. 886.
 
 
 10
 Wollman and Tri-State contend that the district court did indeed award Sec. 1640 statutory damages to the Randalls and Hookfins and that their pursuit of such relief was an election which precluded an award of rescission and consequent actual damages. Similarly, rescission by the DeGrees precluded awarding them statutory damages. Because they view Sec. 1640 relief as inconsistent with rescission, the defendants argue further that the district court's grant of relief to the Randalls under Sec. 1640 affirmed the validity of the Randall contract and hence entitled them to recover on their counterclaim. The failure of the district court to provide such relief is attributed to confusion over the issues in litigation.
 
 
 11
 Without findings of fact and conclusions of law (or a memorandum incorporating them, Rule 52(a)), we can only speculate which, if either, is the correct view of the basis for judgment below. There is no clue within the four corners of the bare judgment. The district judge may have intended to grant rescission and award the Randalls and Hookfins actual damages under Sec. 1635 but have believed an award of Sec. 1635 relief precluded relief under Sec. 1640, as defendants contended. See Bostwick v. Cohen, N.D.Ohio 1970, 319 F.Supp. 875, holding that Sec. 1640 is remedial in nature, not punitive, and that Sec. 1635 and Sec. 1640 provide for mutually exclusive remedies. This might also explain his refusal of relief to the DeGrees. Or, his view was perhaps that while Sec. 1635 relief does not automatically preclude Sec. 1640 relief this was not a proper case for the award of both. See Eby v. Reb Realty, Inc., 9 Cir. 1974, 495 F.2d 646, holding that the grant of both forms of relief rests within the discretion of the court. He may have intended to deny rescission to the Randalls and the Hookfins on state and federal grounds but to grant statutory damages under Sec. 1640. It is conceivable that he may have found no Truth-in-Lending violations but nevertheless ordered rescission on pendent state law grounds, either for fraud or for failure to obtain a building permit. He may have overlooked defendants' counterclaim, found the contract vitiated for Truth-in-Lending or state law violations, or decided that performance of the contract was not substantial. Attorney's fees may have been denied, as plaintiffs believe, because their attorney is a legal services lawyer, but they may also have been denied on discretionary grounds or because no violation of the Truth-in-Lending Act was proved.
 
 
 12
 We cannot determine, in a word, whether the judgment below was founded upon an erroneous or a correct view of state or federal law nor whether the record will support the factual basis for the decision. It is regrettable also that the parties failed to request compliance with Rule 52(a), so that the necessity for remand might be avoided. We vacate the judgment appealed from and remand the cause to the district court, which is directed to enter findings of fact and conclusions of law and judgment accordingly, upon this or a supplemented record.
 
 
 13
 Several observations may be of help to the district court on remand. Defendants have called into question the relationship of Secs. 1635 and 1640, contending that rescission under Sec. 1635 precludes the Sec. 1640 monetary award, relying upon Bostwick, supra. The district judge in Bostwick admittedly construed the statute in a manner most favorable to the extender of credit. The basis for decision was that a debtor is not aggrieved within the meaning of the statute where rescission is granted because he is not liable for any finance charges.
 
 
 14
 Our preliminary view is that the Bostwick opinion is not soundly reasoned and should not be followed in this circuit in cases where violations of the Truth-in-Lending Act are established. We recognize that rescission under traditional contract analysis is inconsistent with affirmance of the contract, and a court, therefore, may not allow rescission while granting the rescinding party the right to sue for its breach. See 28 C.J.S. Election of Remedies §§ 3a, 6. The two remedies are inconsistent and election between them must be made. We do not view Sec. 1640, however, as a remedy for breach of contract, designed to give the nonbreaching party the benefit of his bargain. The damage provisions, providing minimum and maximum limits, is inconsistent with such a thesis. Rather, Sec. 1640 provides a 'civil penalty'. Mourning v. Family Publications Service, Inc., 1973, 411 U.S. 356, 376, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318, 333--34. Accord, Eby v. Reb Realty, Inc., supra.
 
 
 15
 In addition, we have held that the Truth-in-Lending Act is to be construed liberally in favor of the consumer. Thomas v. Myers-Dickson Furniture Co., 5 Cir. 1973, 479 F.2d 740, 748.
 
 
 16
 Finally, the Bostwick court's belief that the consumer is not an aggrieved debtor if he is not required to pay a finance charge is effectively undercut by the recent Supreme Court decision of Mourning v. Family Publications Service, Inc., supra. In Mourning, the four installment rule of Regulation Z, 12 C.F.R. Sec. 226.2(k), promulgated by the Federal Reserve Board was challenged as being outside the scope of the Board's powers. In rejecting this challenge, the Supreme Court considered the argument that Sec. 1640, the 'civil penalty' provision, is inapplicable 'in cases where no finance charge is involved but where a regulation requiring disclosure has been violated,' and held that the imposition of the Sec. 1640 penalty was proper even where the finance charge was non-existent or undetermined. 411 U.S. at 376, 93 S.Ct. at 1664, 36 L.Ed.2d at 333--34. It follows that, although a consumer is not forced to pay a finance charge because he has rescinded, he is not precluded from Sec. 1640 relief. Accord, Eby v. Reb Realty, Inc., supra.
 
 
 17
 To force an election between rescission under Sec. 1635 and recovery under Sec. 1640 undercuts the effectiveness of the act without furthering other policies:
 
 
 18
 The purpose of making creditors civilly liable is to force disclosure of credit terms. The purpose of according borrowers a right of rescission is broader; not only is it designed to compel disclosure, but it also serves to blunt unscrupulous sales tactics by giving homeowners a means to unburden themselves of security interests exacted by such tactics. See 114 Cong.Rec. 1611 (1968) (remarks of Cong. Cahill). If borrowers were forced to choose their 'remedies,' both objectives might be undermined. To the extent that only civil liability is pursued, the sanction against unscrupulous home sales practices is weakened. To the extent that only rescission is chosen--where available--the penalty attendant upon nondisclosure will be less severe and, consequently, the incentive to disclose diminished. See Comment, Private Remedies Under the Truth-in-Lending Act: The Relationship Between Rescission and Civil Liability, 57 Iowa L.Rev. 199, 205--07 (1971). Eby, 495 F.2d at 652.
 
 
 19
 Where the notice provisions of the Act are violated, therefore, relief under both Sec. 1635 and Sec. 1640 is appropriate.
 
 
 20
 If the district judge determines that Wollman and Tri-State violated the Truth-in-Lending Act, plaintiffs should not be denied attorney's fees because their attorney was employed by a legal aid society. Sec. 1640(a)(2) directs their award, and such an award is not contingent upon an obligation to pay an attorney, or the fact that no fee was charged. Thompson v. Madison County Board of Education, 5 Cir. 1974, 496 F.2d 682; Fairley v. Patterson, 5 Cir. 1974, 493 F.2d 598; Miller v. Amusement Enterprises, Inc., 5 Cir. 1970, 426 F.2d 534. See also Jones v. Seldon's Furniture Warehouse,supra.
 
 
 21
 Vacated and remanded.
 
 
 
 [1]
 Named as defendants and later dismissed were United Credit Plan of New Orleans, Inc., and Anthony Love. Also sued were Sal Sabella and Clayton Pitre. Service was never made on Sabella and judgment by default was entered against Pitre
 
 
 [2]
 The attorney for Tri-State wrote to the DeGrees threatening legal action unless they allowed performance of the contract or reimbursed Tri-State for expenses it incurred in preparing to perform its contract with them
 
 
 [3]
 Work on the Randall home began the day after the contract was signed. Aluminum siding was installed and four inside rooms were paneled. One room remained to be paneled when work was stopped by a representative of the Community Improvement Agency, an agency whose approval was necessary before a building permit could be obtained, because defendants had failed to procure the requisite approval and permit. The Randalls sought $600 actual damages, alleging that the work done was defective and would have to be torn out
 The Hookfin contract called for the addition of a room. Defendants began work within three days of signing the contract, and had torn out existing siding, the back steps, and a garage wall when a representative of the Community Improvement Agency stopped the work for lack of agency approval and a building permit. The Hookfins claimed $800 in actual damages.
 
 
 [4]
 The Randalls lived in an area scheduled for rehabilitation under an urban renewal project sponsored by HUD. It was testified that residents in that area could qualify for grants up to $3500, and financing at 3% for additional sums. Wollman allegedly represented to the Randalls that the money they spent under the contract would be reimbursed. The credit extended to them was secured and arranged by Wollman at an interest rate of 13.69%