GEE, Circuit Judge:
 

 This case presents a question of first impression in this circuit: whether a bankrupt’s cause of action against a lending institution for statutory damages under section 130(a)(2) of the Truth in Lending Act
 
 *189
 
 (“TILA”), 15 U.S.C. § 1640(a) (1976),
 
 [1]
 
 passes to the trustee in bankruptcy pursuant to section 70a of the Bankruptcy Act, 11 U.S.C. § 110(a) (1976)
 
 [2]
 
 (repealed 1978).
 
 [3]
 
 In accord with other courts that have considered the precise issue before us,
 
 Murphy v. Household Finance Corp.,
 
 560 F.2d 206 (6th Cir. 1977), and
 
 Porter
 
 v.
 
 Household Finance Corp.,
 
 385 F.Supp. 336 (S.D.Ohio 1974),
 
 [4]
 
 we hold that it does.
 

 The material facts of this case are not in dispute. On November 16, 1976, Betty Lou Wood (“debtor”) received a signature loan from the First National Bank & Trust Company in Macon (“lender” or “plaintiff”). On May 9, 1977, she obtained a second loan from the plaintiff and transferred to plaintiff as security a 1977 Honda automobile. On closing this second loan, she signed an “Installment Note and Disclosure Statement,” as well as a security agreement.
 

 Subsequently, on October 21, 1977, Ms. Wood was adjudicated a bankrupt upon the filing of her voluntary petition in bankruptcy. As of that date, the sum of $42.44 remained outstanding on the first loan, and the sum of $2,848.59 remained outstanding on the second loan. The 1977 Honda was scheduled as an asset of her estate, subject to the perfected security interest of the plaintiff.
 

 On November 18, 1977, plaintiff filed a complaint against William M. Flatau (“trustee” or “defendant”) as trustee of the debt- or’s estate, seeking reclamation of the Honda. The defendant filed his answer, generally denying the pertinent allegations of the reclamation complaint, and filed a counterclaim for statutory damages and attorneys’ fees, but no actual damages, from the plaintiff for an alleged violation of the TILA and applicable regulations.
 

 The bankruptcy judge granted the plaintiff’s reclamation complaint but dismissed the trustee’s counterclaim on the ground that the trustee had no standing to file a TILA counterclaim against the lender. In
 
 *190
 
 so holding, he relied upon an unreported district court decision,
 
 Flatau v. Bone,
 
 Civ. No. 77-8-Ath (M.D.Ga. Feb. 4, 1977), which held that TILA claims are not transferable to the trustee in bankruptcy under section 70a(5) of the Bankruptcy Act. On appeal, the trustee urged the district judge who had rendered the decision in
 
 Flatau v. Bone, supra,
 
 to reexamine its holding in that ease in light of the subsequent contrary decision of the Sixth Circuit in
 
 Murphy v. Household Finance Corp., supra.
 
 The district court, however, unpersuaded by the Sixth Circuit’s reasoning in
 
 Murphy,
 
 reiterated its view that a TILA claim is not transferable to a trustee in bankruptcy under section 70a of the Bankruptcy Act and that therefore the trustee had no standing to file a TILA counterclaim. Accordingly, it affirmed the decision of the bankruptcy judge.
 

 Section 70a(5) of the Bankruptcy Act vests the trustee with the debtor’s title to “property, including rights of action, which prior to the filing of the petition he [the debtor]
 
 could by any means have transferred . .
 
 . .” Bankruptcy Act, § 70a(5), 11 U.S.C. § 110(a)(5) (emphasis added). Neither the TILA nor the regulations promulgated thereunder discuss the transferability of a claim for statutory damages under section 130(a)(2)(A). For the purposes of the Bankruptcy Act, a cause of action is transferable if the action would “survive” the death of the debtor.
 
 Murphy v. Household Finance Corp.,
 
 560 F.2d at 208. The question of survivability is a matter of federal law.
 
 Id. See also Smith v. No. 2 Galesburg Crown Finance Corp.,
 
 615 F.2d 407, 413 (7th Cir. 1980);
 
 Heikkila v. Barber,
 
 308 F.2d 558, 561 (9th Cir. 1962). It has long been established that causes of action predicated on penal statutes do not survive the death of the debtor, see
 
 Schreiber v. Sharpless,
 
 110 U.S. 76, 28 L.Ed. 65 (1884), whereas remedial damage actions do survive. Thus, only if we are able to characterize the civil liability provisions of the TILA,
 
 see
 
 n. 1,
 
 supra,
 
 as being remedial will the trustee here have standing to press the debtor’s TILA claim.
 
 [5]
 

 The TILA affords a debtor statutory damages of twice the amount of any finance charge
 
 [6]
 
 for a creditor’s failure to disclose required information, regardless of whether the debtor has suffered any actual damages. There can be no doubt that this provision effectively imposes a penalty on the creditor. In fact, both Congress
 
 [7]
 
 and the Supreme Court
 
 [8]
 
 have used the term “civil penalty” to describe these statutory damages. That a penalty is imposed, however, does not end our inquiry. We must still determine whether a TILA action for statutory damages is penal for the purpose of survival. “The problem, simply put, is that the term ‘penal’ is used in different contexts to mean different things.”
 
 Smith v. No. 2 Galesburg Crown Finance Corp.,
 
 615 F.2d at 414 (footnote omitted).
 

 The Supreme Court discussed the multifarious meanings of the words “penal” and “penalty” in
 
 Huntington v. Attrill,
 
 146 U.S. 567, 13 S.Ct. 224, 36 L.Ed. 1123 (1892):
 

 In the municipal law of England and America, the words “penal” and “penalty” have been used in various senses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws, [citations omitted]. But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. They are so elastic in meaning as even to be familiarly applied to cases of
 
 *191
 
 private contracts, wholly independent of statutes, as when we speak of the “penal sum” or “penalty” of a bond.
 

 Penal laws, strictly and properly, are those imposing punishment for an offense committed against the State, and which, by the English and American constitutions, the executive of the State has the power to pardon. Statutes giving a private action against the wrongdoer are someimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.
 

 The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual, according to the familiar classification of Blackstone: “Wrongs are divisible into two sorts of species:
 
 private wrongs
 
 and
 
 public wrongs.
 
 The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals; and are thereupon frequently termed
 
 civil injuries :
 
 the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community; and are distinguished by the harsher appellation of
 
 crimes
 
 and
 
 misdemeanors.”
 
 3 Bl. Com. 2.
 

 Id.
 
 at 666-69, 13 S.Ct. at 227 — 228 (emphasis in original). This passage makes manifest that statutory damages under the TILA, even though they may commonly be characterized as a “penalty,” are not necessarily “penal” for survival purposes. In fact, both of the courts that have considered the precise issue before us, citing
 
 Huntington,
 
 have concluded that such damages are remedial for the purpose of determining survivability-
 

 The Sixth Circuit in
 
 Murphy v. Household Finance Corp., supra,
 
 distilled three factors from
 
 Huntington
 
 and its progeny to be used in determining whether a statute is penal or remedial: “(1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.” 560 F.2d at 209. An examination of those factors
 
 [9]
 
 led the court to conclude that a cause of action under section 130 of the TILA is remedial in nature:
 

 The Truth in Lending Act ultimately serves the dual purpose of providing a remedy for harm to the monetary interests of individuals while serving to deter socially undesirable lending practices. Congress focused on the individual consumer of credit as a person primarily injured who should be encouraged to prosecute actions and should be allowed to recover directly and adequately for harms done. This is not the sort of statutory scheme properly characterized as penal.
 

 Id.
 
 at 211. In reaching this conclusion the court placed particular reliance on
 
 Mourning v. Family Publications Service, Inc.,
 
 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), in which the Supreme Court stated that section 130 liability was not the kind of penalty that courts were required to construe within the narrow limits reserved for strictly penal enactments.
 
 [10]
 
 See
 
 Murphy,
 
 560 F.2d at 209-10.
 

 
 *192
 

 Murphy
 
 also drew liberally from
 
 Porter
 
 v.
 
 Household Finance Corp., supra,
 
 the seminal case on the issue of a trustee in bankruptcy’s standing to bring the bankrupt debtor’s section 130 claim. The district court in
 
 Porter
 
 divined in
 
 Huntington
 
 the “true test” of whether a statutorily imposed liability is penal or remedial in nature: “whether the wrong to be remedied or punished is primarily to an individual or to the State.” 385 F.Supp. at 341. Candidly acknowledging that TILA liability under section 130 “does not fall neatly within the common law categories of either a penalty or a remedial action for injury to property or monetary interest,”
 
 id.
 
 at 342, the court concluded that the primary purpose of section 130, a type of social welfare legislation unknown at the time of
 
 Huntington,
 
 is remedial: “The accumulative damage is meant to encourage debtors to seek their remedy under the Act, and it liquidates an uncertain damage. It is not primarily penal in the sense of a punishment imposed by the State for wrongdoing.”
 
 Id.
 
 at 342-43. The court reasoned that
 
 Id.
 
 at 342 (footnote omitted).
 
 Accord, Bin-nick v. Avco Financial Services of Nebraska, Inc.,
 
 435 F.Supp. 359, 365 (D.Neb.1977). Furthermore, the court likened suits for statutory damages under TILA to antitrust treble damage actions, which had “been held to create a civil remedy and not to impose a penalty.” 385 F.Supp. at 341 (footnote omitted).
 
 See also
 
 cases cited,
 
 id.
 

 [t]he misrepresentation of the cost of credit may have prevented the debtor from obtaining cheaper credit after comparison shopping. The debtor’s actual damages are difficult to ascertain. Nonetheless, the creditor has injured the debtor in his monetary interests by misrepresenting the cost of credit. And the Truth-in-Lending Act avoids the difficulty in calculating damages by providing for liquidated damages of twice the amount of the finance charge.
 

 We are persuaded by the reasoning of
 
 Murphy
 
 and
 
 Porter
 
 that the purpose of section 130 liability is remedial, that a section 130 claim therefore survives the death of the debtor, and that, consequently, such a claim can be transferred by the debtor to a trustee in bankruptcy. No argument propounded by the plaintiff here convinces us otherwise.
 

 The plaintiff’s attack on
 
 Murphy
 
 and
 
 Porter
 
 is founded in large measure on
 
 Johnson v. Household Finance Corp.,
 
 453 F.Supp. 1327 (N.D.Ill.1978). The district court there questioned the vitality of
 
 Huntington,
 
 the efficacy of analogizing TILA civil liability to antitrust treble damages, and the legitimacy of interpreting
 
 Mourning
 
 to support the proposition that section 130 is remedial. 453 F.Supp. at 1330-31. Not surprisingly, it concluded that the TILA is penal.
 
 Id.
 
 at 1331.
 

 There are several significant reasons why we are loath to follow
 
 Johnson.
 
 First,
 
 Johnson
 
 dealt with the issue of the survival of a TILA claim
 
 but not in the context of the Bankruptcy Act.
 
 In fact, the court twice cautioned
 
 [11]
 
 that it was not concerned with the issue before the court in both
 
 Murphy
 
 and
 
 Porter.
 
 Second,
 
 Johnson
 
 appears to have been overruled
 
 sub silentio
 
 by
 
 *193
 

 Smith v. No. 2 Galesburg Crown Finance Corp.,
 
 615 F.2d 407 (7th Cir. 1980). Third, and perhaps most significantly, we are unpersuaded by the court’s reasoning that
 
 Murphy
 
 and
 
 Porter
 
 were wrongly decided, as our discussion today makes clear.
 
 Cf. James v. Home Construction Co.,
 
 621 F.2d 721 (5th Cir. 1980) (following Smith).
 

 Plaintiff fires several other salvos, but each is wide of the mark. It initially contends that section 130 is penal because it imposes liability beyond the amount of actual damages suffered by the debtor. This argument was summarily rejected in
 
 Murphy
 

 [12]
 

 and Porter
 
 [13]
 
 and is similarly rejected here, for like reasons.
 

 Plaintiff also questions the analogy, proposed in
 
 Porter,
 
 385 F.Supp. at 341, and followed in
 
 Murphy,
 
 560 F.2d at 210 n. 5, of section 130 statutory damages to “remedial” antitrust treble damages.
 
 See Johnson v. Household Finance Corp.,
 
 453 F.Supp. at 1331. It submits that a plaintiff in an antitrust action who suffers no actual damages will not recover any treble damages, whereas the proponent of a TILA claim who has suffered no actual damages will nevertheless recover at least the minimum amount provided in section 130(a)(2). This distinction, it contends, vitiates the force of the analogy and requires that we hold TILA claims for statutory damage to be penal. We cannot agree. First, this argument fails to recognize that in the overwhelming majority of antitrust cases in which plaintiffs prevail treble damages
 
 will
 
 be imposed and the defendant required to compensate the plaintiff far beyond the amount of plaintiff’s actual loss; yet the courts have repeatedly characterized treble damages as remedial.
 
 See
 
 cases cited in
 
 Porter,
 
 385 F.Supp. at 341.
 
 See also Smith v. No. 2 Galesburg Crown Finance Corp.,
 
 615 F.2d at 415 & n. 22. Second, the lender’s argument assumes that one who brings suit solely for statutory damages, as the trustee in the instant case has done, has suffered no actual damages. However, as the court in
 
 Porter
 
 acknowledged, statutory damages compensate the debtor for actual damages that may in fact be “difficult to ascertain.” 385 F.Supp. at 342. Thus, we see no reason to distinguish the recovery of statutory damages in a TILA action from an award of antitrust treble damages; if the latter are remedial, the former must be, too.
 

 Plaintiff further contends that we should refuse to transfer the debtor’s TILA claim to the trustee in bankruptcy so that the debtor herself can bring the claim once she has been adjudicated a bankrupt. In plaintiff’s view, permitting the trustee to press the debtor’s TILA claim for the benefit of the creditors contravenes the purpose of the TILA by depriving the individual who was actually injured by the TILA violation of
 
 *194
 
 his recovery. This argument, however, cannot prevail. In pressing the TILA claim, the trustee stands in the shoes of the bankrupt debtor; any funds he recovers become part of the bankrupt’s estate.
 
 [14]
 
 Even if creditors do ultimately benefit from the trustee’s recovery, the debtor’s rights against the offending lender are nonetheless vindicated by the trustee’s suit, thus effectuating, rather than thwarting, the purpose of the TILA. Moreover, claims that are rooted in a debtor’s past financial plight are generally held to pass to the trustee in bankruptcy; only claims that look to the debtor’s future economic rehabilitation are not transferred.
 
 See Porter v. Household Finance Corp.,
 
 385 F.Supp. at 339. We see no reason to distinguish a TILA claim from other claims that grow out of a debtor’s past financial transactions.
 

 Although not in the context of the issue before us, this court has repeatedly characterized the purpose of the TILA as remedial, very recently in
 
 Travis v. Trust Co. Bank,
 
 621 F.2d 148, 151 (5th Cir. 1980) (“the Act has been found uniformly to be remedial in nature and thereby liberally and broadly construed in favor of the consumer”), and most recently in
 
 James v. Home Construction Co.,
 
 621 F.2d 721 (5th Cir. 1980).
 
 See also Smith v. Chapman,
 
 614 F.2d 968, 971 (5th Cir. 1980);
 
 Cody v. Community Loan Corp.,
 
 606 F.2d 499, 505 (5th Cir. 1979),
 
 appeal docketed
 
 (446 U.S. 988, 100 S.Ct. 2973, 64 L.Ed.2d 846 (1980);
 
 Lawson v. Conyers Chrysler, Plymouth & Dodge Trucks, Inc.,
 
 600 F.2d 465, 466 (5th Cir. 1979);
 
 Plant v. Blazer Financial Services, Inc.,
 
 598 F.2d 1357, 1362 n. 7 (5th Cir. 1979);
 
 Williams v. Public Finance Corp.,
 
 598 F.2d 349, 356 (5th Cir. 1979),
 
 on petition for rehearing,
 
 609 F.2d 1179 (5th Cir. 1980);
 
 McGowan v. King,
 
 569 F.2d 845, 848 (5th Cir. 1978);
 
 Martin v. Commercial Securities Co.,
 
 539 F.2d 521, 523 (5th Cir. 1976);
 
 Thomas v. Myers-Dickson Furniture Co.,
 
 479 F.2d 740, 748 (5th Cir. 1973). What is more, we have specifically found section 130 to be consistent with the remedial character of the TILA, citing
 
 Murphy
 
 and
 
 Porter
 
 in support of that proposition:
 

 Section 1640 [section 130] does not provide for forfeiture of the creditor’s property. It provides in relevant part for an award of actual damages, a reasonable attorney’s fee, and twice the amount of any finance charge in an amount up to $1,000 and not less than $100.
 
 Application of § 1640 [§ 130] thus serves the congressional purpose of restoring the parties to the status quo ante and is consistent with the Act’s remedial character. Murphy v. Household Finance Corp.,
 
 560 F.2d 206, 208-11 (6th Cir. 1977);
 
 Binnick v. Avco Financial Services of Nebraska, Inc.,
 
 435 F.Supp. 359, 364-66 (D.Neb.1977);
 
 Porter v. Household Finance Corp. of Columbus,
 
 385 F.Supp. 336, 340-43 (S.D.Ohio 1974). If, after a hearing, the court determines that the consumer is entitled to rescind, the consumer will be recompensed for any additional damages and costs he has incurred as a result of the litigation.
 

 Gerasta v. Hibernia National Bank,
 
 575 F.2d 580, 584 (5th Cir. 1978) (emphasis added). Despite some language to the contrary in
 
 Newton v. Beneficial Finance Co.,
 
 558 F.2d 731 (5th Cir. 1977),
 
 [15]
 
 we perceive no
 
 *195
 
 reason to depart from our long-established view — expressed in decisions both antedating and postdating
 
 Newton
 
 —that the TILA and its damage-provisions are to be regarded for most purposes as remedial in nature.
 

 For the reasons stated above, we conclude that the debtor’s TILA claim is transferable to the trustee in bankruptcy under section 70a(5) of the Bankruptcy Act.
 
 [16]
 
 The district court therefore erred in denying the trustee standing to assert the TILA claim as a counterclaim in the bank’s reclamation action. Accordingly, the judgment of the district court is reversed, and this case is remanded for proceedings consistent with this opinion.
 

 REVERSED and REMANDED.
 

 [1]
 

 . Section 1640(a) provides in relevant part:
 

 (a) Individual or class action for damages; amount of award; factors determining amount of award
 

 Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
 

 (1) any actual damage sustained by such person as a result of the failure;
 

 (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction . . . , except that the liability under this subpara-graph shall not be less than $100 nor greater than $1,000;
 

 (3) in the case of any successful action to enforce the foregoing liability the costs of the action, together with a reasonable attorney’s fee as determined by the court.
 

 [2]
 

 . In pertinent part, § 110(a) provides:
 

 (a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located .
 

 (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered:
 
 Provided,
 
 That rights of action ex delicto for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process: .
 

 (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property; .
 

 (emphasis in original).
 

 [3]
 

 . Even though the Bankruptcy Act was repealed by the Act of Nov. 6, 1978, Pub. L. 95-598, 92 Stat. 2549 (codified at 11 U.S.C.A. § 101
 
 et seq.
 
 (West 1979)), effective Oct. 1, 1979, a case commenced under the “old” Act is governed by the provisions of that Act. Act of Nov. 6, 1978, Pub. L. 95-598, § 403(a), 92 Stat. 2683 (codified at 11 U.S.C.A. § 101
 
 et seq.).
 

 [4]
 

 . See also Haskins v. American Buyers Club, Inc.,
 
 77 F.R.D. 715, 717-18 (S.D.Ill.1978) (following
 
 Murphy); In re Dunne,
 
 407 F.Supp. 308 (D.R.I.1976) (following
 
 Porter); In re Warren,
 
 387 F.Supp. 1395, 1403 (E.D.Ohio 1975) (following
 
 Porter).
 

 [5]
 

 . Whether a cause of action is to be characterized as “penal” or “remedial” is a matter of federal law.
 
 Murphy v. Household Finance Corp.,
 
 560 F.2d at 208.
 

 [6]
 

 . The statute sets a minimum recovery of $100 and a maximum of $1,000, regardless of the amount of the finance charge.
 

 [7]
 

 . Consumer Credit Protection Act, H.R. Rep. No. 1040, 90th Cong., 2d Sess.,
 
 reprinted in
 
 [1968] U.S.Code Cong. & Ad.News, 1962, 1976, 1987.
 

 [8]
 

 .
 
 See Mourning v. Family Publications Serv., Inc.,
 
 411 U.S. 356, 376, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973).
 

 [9]
 

 . The recovery provided in § 130 runs in favor of the individual. State involvement in the enforcement of the Act is limited to the criminal liability provisions of § 112, 15 U.S.C. § 1611, and the administrative enforcement provisions of § 108, 15 U.S.C. § 1607. As Chief Justice Burger noted in the foregoing quotation from
 
 Mourning [v. Family Publications Serv., Inc.,
 
 411 U.S. 356, 376, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318,
 
 see
 
 n. 8,
 
 infra,
 
 the dollar amount of the recovery authorized by § 130 is modest.
 

 560 F.2d at 210.
 

 [10]
 

 . Section 130 provides that the penalty assessed shall be twice the amount of the finance charge imposed, but not less than $100. Since the civil penalty prescribed is modest and the prohibited conduct clearly set out in the regulation, we need not construe this section as narrowly as a criminal statute
 
 *192
 
 providing graver penalties, such as prison terms.
 

 411 U.S. at 376, 93 S.Ct. at 1664.
 

 [11]
 

 . Although this court is not concerned with the issue in
 
 Murphy, supra,
 
 and
 
 Porter v. Household Finance Corp.,
 
 385 F.Supp. 336 (S.D.Ohio 1974), upon which
 
 Murphy
 
 substantially relied, we yet must be concerned with the reasoning of those cases which equated the issue therein faced with the question whether a TILA claim does survive the death of a party.7
 

 7 Both cases dealt with the question whether a TILA claim was an asset in the hands of a trustee in bankruptcy.
 

 Id.
 
 at 1330.
 

 We reiterate the fact that the analysis herein is not concerned with the issue which was before the court in both
 
 Murphy
 
 and
 
 Porter.
 
 The question whether a TILA claim is an asset in the hands of a trustee in bankruptcy under Section 70(a)(5) of the Bankruptcy Act, 11 U.S.C. 110(a)(5), is not considered by the court in this opinion, nor has the court made any determination as to the effect, if any, which this opinion might have upon that issue.
 

 Id.
 
 at 1332 n. 11.
 

 [12]
 

 . HFC contends that § 130 must be penal because it allows the consumer to recover not only actual damages but “twice the finance charge” in addition to actual damages. This contention is without merit. The fact that the statute allows for accumulated recovery does not convert an otherwise remedial statutory scheme into a penal one.
 
 See Huntington, supra,
 
 146 U.S. at 667-68, 13 S.Ct. 224 [at 227-28]. Moreover, as the court noted in
 
 Porter, supra,
 
 385 F.Supp. at 341, the Supreme Court, this court and the courts of numerous other circuits have held a number of statutory schemes authorizing multiple recoveries and minimum recoveries greater than actual damages to be remedial and not to impose penalties where the wrong addressed by the statute is primarily a wrong to the individual.5 Such is the case with the Truth in Lending Act. The § 130 cause of action is not made penal by the fact that the statute allows cumulative recoveries as a vehicle for encouraging enforcement.
 

 5 Treble damage actions under the antitrust and patent laws are two examples of statutory schemes which authorize recoveries substantially in excess of “actual” damages but which have been held not to be penalties (and thus to survive). Relevant decisions are catalogued in
 
 Porter, supra,
 
 385 F.Supp. at 341.
 

 560 F.2d at 210 & n. 5.
 

 [13]
 

 . “In a given case the ‘actual’ provable damages may be much less than the recoverable statutory damage. To this extent the remedy is ‘penal.’ But this is not in the sense of the term which would result in a holding of nontransfer-ability. See,
 
 Huntington v. Attrill,
 
 146 U.S. 657, 13 S.Ct. 224 [36 L.Ed. 1123],
 
 supra."
 
 385 F.Supp. at 343 n. 10. For the
 
 Porter
 
 court’s explanation of the purpose of statutory damages,
 
 see id.
 
 at 342,
 
 quoted
 
 at p. 192,
 
 supra.
 

 [14]
 

 . Some of the money recovered by the trustee could come into the hands of the debtor if the amount of recovery is sufficient to repay the creditors. This is not as unlikely as it may seem, given the possibility of multiple TILA violations on the part of various lenders and a maximum recovery of $1,000 per violation. 15 U.S.C. § 1640(a)(2)(A).
 

 [15]
 

 . While a few courts have held that Truth in Lending is remedial, this view was explicitly rejected by this court in
 
 Sellers v. Wollman,
 
 510 F.2d 119 at 122 (CA5, 1975). Moreover, after the 1974 amendment to Truth in Lending the position of the appellee is even less tenable since § 130 of the Act, 15 U.S.C. § 1640(a), now permits a party to recover both actual damages and an amount equal to twice the finance charge. It is difficult to see how the latter amount could be anything but a statutory penalty.
 

 Id.
 
 at 732.
 

 Contrary to plaintiff’s assertion, this language does not control the case before us. The issue in
 
 Newton
 
 was whether a debt that had been extinguished in bankruptcy could be asserted by the lender as a counterclaim in a subsequent TILA suit brought by the debtor. In holding that it could not, we declined to
 
 *195
 
 distinguish the “statutory penalty” imposed by the TILA from the penalty at issue in
 
 McCollum v. Hamilton National Bank,
 
 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819 (1938) (holding that a debt discharged in bankruptcy could not be used to offset a statutorily imposed penalty against a national bank for changing usurious interest). It is crucial to observe, however, that our stressing the punitive aspect of TILA statutory damages in
 
 Newton
 
 protected the
 
 interests of the borrower,
 
 consistent with the policies underlying the TILA,
 
 see
 
 15 U.S.C. § 1601, by insulating his TILA claim from the creditor’s setoff. It is thus fully consistent for us here to emphasize the
 
 remedial
 
 nature of the TILA in the context of survival under the Bankruptcy Act in order likewise to facilitate the vindication of the debtor’s rights against the lender.
 

 Moreover,
 
 Sellers v. Wollman,
 
 510 F.2d 119 (5th Cir. 1975), did not explicitly reject the view that the TILA is remedial.
 
 Cf. Cody v. Community Loan Corp.,
 
 606 F.2d 499, 505 (5th Cir.),
 
 cert denied,
 
 446 U.S. 988, 100 S.Ct. 2973, 64 L.Ed.2d 843 (1980), which cited
 
 Seilers
 
 for the proposition that the TILA is remedial. In
 
 Sellers
 
 we merely observed that section 130 of the TILA provides a “civil penalty,”
 
 id.,
 
 at 122 (citing
 
 Mourning v. Family Publications Serv.,
 
 411 U.S. at 376, 93 S.Ct. at 1664). As we noted above,
 
 see
 
 p. 191,
 
 supra,
 
 the fact that a statute provides for a “penalty” does not conclusively determine that the statute is “penal” for all purposes. We did not make such a determination in
 
 Sellers;
 
 we simply recognized there that a debtor could recover statutory damages under § 130 in addition to securing rescission of the loan agreement with respect to which the TILA violation was committed.
 

 Thus, neither
 
 Sellers
 
 nor
 
 Newton
 
 establishes that the TILA is “penal” for survival purposes.
 

 [16]
 

 . Because we find the debtor’s TILA claim transferable under § 70a(5), we do not consider whether the claim passes to the trustee under § 70a(6).
 
 See
 
 n. 2,
 
 supra.
 
 We note, however, that several courts have held that it does.
 
 See, e. g., In re Dunne,
 
 407 F.Supp. 308 (D.R.I.1976) (TILA claim
 
 “arises from
 
 the very terms of the contract existing between the parties relative to said consumer loan transaction”) (emphasis in original);
 
 Porter v. Household Finance Corp.,
 
 385 F.Supp. at 344-45 (indicating in dictum that the cause of action might pass under 70a(6) either because it grew out of a contract or because it involved usury).