Michael Anthony **FAIR** and Sharon R. Fair, Plaintiffs,

v.

**NATIONWIDE MORTGAGE CORPORATION, Daisy Hopkins, Family Savings and Loan Association of Virginia, and Southeast Title Corporation, Defendants.**

Civ. A. No. 83–0179.

United States District Court, District of Columbia.

Oct. 11, 1983.

E. William Tupling, Washington, D.C., for plaintiffs.

Richard Boddie, Ruttenberg, Phelps & Slocum, Falls Church, Va., for defendant Nationwide Mortg. Corp.

Michael E. Brand, Miller, Loewinger & Associates, Chartered, Washington, D.C., for defendant Family Savings and Loan Ass'n of Virginia.

Richard L. Fields, Oxon Hill, Md., for defendant Southeast Title Corp.

## MEMORANDUM OPINION

ARTHUR L. BURNETT, United States Magistrate.

This case arises out of facts described by the plaintiffs as follows. Plaintiff Michael Anthony Fair in a sworn declaration, filed with the complaint, has represented that on December 19, 1979 he and his wife executed a note for ten thousand dollars ($10,000.00) to Gary Quittschreiber on 1926 17th Street, S.E. in the District of Columbia. Thereafter, they missed several payments and Mr. Quittschreiber notified them that he was accelerating the payments and demanding the entire balance. Mr. Fair stated that on approximately May 1, 1981 he was out in front of his house at 1928 17th Street, S.E. when a woman, who identified herself as Daisy Hopkins, approached and handed him a notice on the letterhead of Nationwide

Mortgage Corporation.[1] According to Mr. Fair, he explained his situation to her, and she responded that she was sure she could help him, and she requested thirty-one dollars ($31.00) for a credit report and one hundred fifty dollars ($150.00) for an appraisal.

According to Mr. Fair, subsequently on approximately May 10, 1981, Ms. Hopkins asked him to come to her home, and then told him that he could get the money he needed if he stated at settlement that he was using it for a business. Mr. Fair stated he told Ms. Hopkins he was a Postal employee and she asked if he knew anyone who had a business. Mr. Fair said he told her that his cousin had a security business, and she responded, "Fine. Say that you are purchasing a car for use in the security business." Mr. Fair stated that thereafter on May 18, 1981, he saw a legal notice in the Washington Star announcing that 1926 17th Street, S.E. would be auctioned at 1:15 p.m. on May 22, 1981, and he immediately called Ms. Hopkins. After further calls, she told him that settlement would be at 10:00 a.m. on May 22, 1981. Mr. Fair claimed that he was told to hurry up and sign the papers at the settlement, and according to his declaration, he was never told before settlement what the interest rate on the loan would be, what fee Ms. Hopkins was claiming or the placement fee that would be required. He further stated: "We signed everything very fast and they asked me to copy a statement in my own handwriting stating that I was borrowing the money for a business purpose."[2] A sworn affidavit by Michael A. Fair, executed in March, 1983, filed with plaintiffs' opposition to defendant Family Savings and Loan Association of Virginia's motion for summary judgment repeats these representations.

A copy of the promissory note attached to the complaint indicated it was for twenty-one thousand three hundred and no/100 dollars ($21,300.00) with interest until paid at the rate of fifteen (15) per centum per annum, with monthly payments commencing on July 1, 1981 at $266.25 per month. The U.S. Department of Housing and Urban Development Settlement Statement form indicated settlement charges of $736.80, discount to Nationwide of $4,260.00 and a brokerage fee to Ms. Hopkins of $2,130.00, for a gross amount due from the borrower of $7,126.80, leaving a net to borrower of $14,173.20.[3] They assert that, in fact, they only received $13,955.79. Since the promissory note for $21,300.00 at 15% per annum would require them to pay a total of $24,495.00 for the use of $13,955.79, they claimed this amounted to an effective annual interest rate yield of 75.52 per centum.

Plaintiffs, claiming that the loan was a consumer personal loan, have asserted causes of action under the Truth-in-Lending Act, 15 U.S.C. §§ 1601 et seq., and pendent causes of action under the District of Columbia usury laws, 28 D.C.Code §§ 3301 et seq., the District of Columbia Consumer Credit Protection Act, 28 D.C.Code §§ 3801

1. The notice, addressed to "Dear Sir/Madam" commenced:
   "Are you in need for money? If so I may be able to help you by one of more of the following options:
   1. By refinancing your mortgage.
   2. By getting you a 2nd TRUST EQUITY LOAN.
   . . ."
   It bore a signature of "Daisy Hopkins" over the signature block: "Daisy Hopkins, Associate Broker."

2. That statement read:
   "To whom it may concern.
   This is to certify that the loan from Nationwide Mortgage Corporation is for business purposes in accordance with Title 28, Chapter 33, Sub-title 3, Section 301, of the D.C. Code."
   An affidavit of May 22, 1981 further indicated the purpose of the loan was "to purchase auto for my security business for patrols" and the location of the business was given as 1312 H Street, N.E., Washington, D.C. 20002.

3. Plaintiffs assert that another tabulation sheet actually showed they got less than $14,173.20, as an additional $217.31 was deducted for some purpose they did not understand, and the remainder of the $11,667.99 went to pay off the Quittschreiber second trust, and they received the balance of $2,287.90. This sheet also contained the notation: "To purchase auto in my security business for patrols."

*et seq.,* the District of Columbia Consumer Protection Procedures Act, 28 D.C.Code § 3901 *et seq.,* and the District of Columbia Loan Shark Act, 26 D.C.Code §§ 701 *et seq.*

On October 3, 1983 defendant Family Savings and Loan Association filed a motion to dismiss, or, in the alternative, for full or partial summary judgment, asserting:

1. The plaintiffs no longer have any right to maintain this action, nor any ownership interest in the property located at 1926 17th Street, S.E., Washington, D.C., the plaintiffs having placed themselves in bankruptcy proceedings, resulting in a trustee-in-bankruptcy taking over their estate.

2. Alternatively, that the federal claims of the plaintiff are barred by the applicable statute of limitations requiring suit to be initiated within one (1) year; and,

3. Alternatively, that all remaining claims, which are merely pendent, be dismissed, there having been no diversity jurisdiction on the date this suit was filed on January 24, 1983.

As the motion is being decided on the first ground cited, we shall not deal with the two (2) alternative grounds in any significant extent in this Memorandum Opinion.[4]

■ It appears that on November 4, 1982, plaintiffs Michael Anthony Fair and Sharon R. Fair filed a voluntary petition in bankruptcy under Chapter 7 of the United States Bankruptcy Code (Bankruptcy Case No. 82–00610). As a result, all assets previously owned by the debtors Michael and Sharon Fair, including all interest in the real estate located at 1926 17th Street, S.E. and all claims relating thereto, including all causes and choses-in-action, became the property of the trustee-in-bankruptcy as part of the bankrupts' estate. Further, it has been specifically held that a debtor's claim for damages for violation of the Truth-in-Lending Act was transferable to the borrower's trustee-in-bankruptcy. *Matter of Wood,* 643 F.2d 188, 189 (5th Cir. 1980); *Riggs v. Government Employees Financial Corp.,* 623 F.2d 68 (9th Cir.1980); *Murphy v. Household Finance Corp.,* 560 F.2d 206 (6th Cir.1977); *Porter v. Household Finance Corp.,* 385 F.Supp. 336 (S.D. Ohio 1974). A bankrupt's cause of action against a lending institution for statutory damages under the Truth-in-Lending Act thus passes to the trustee-in-bankruptcy. In such a situation, the trustee of the estate becomes a necessary party, and a complaint by the bankrupt as plaintiff can be dismissed as to the bankrupt for non-joinder of an essential party. *Haskins v. American Buyers Club, Inc.,* 77 F.R.D. 715, 718 (S.D. Ill.1978).

It has been suggested that if the trustee has abandoned a cause of action, the bankrupt may maintain the cause of action. See *Taylor v. Swirnow,* 80 F.R.D. 79, 82 (D.Md. 1978), citing *Dallas Cabana, Inc. v. Hyatt Corp.,* 441 F.2d 865, 867–68 (5th Cir.1971). But in this case defendant Family Savings and Loan has insisted that at no time did Robert Tyler, Esq., the trustee-in-bankruptcy, abandon the claim back to the debtors, nor did he abandon the real property asset of the estate, 1926 17th Street, S.E. to the debtors. They point to specific proceedings in the Bankruptcy Court to refute any evidence of such abandonment. It appears that the trustee submitted a notice of his intention to sell certain assets of the estate

4. With respect to the statute of limitations issue, it appears that the plaintiffs filed an identical predecessor suit in this Court in January, 1982, well within the one (1) year of the May 22, 1981 acts complained of in this litigation, and because of the plaintiffs initiating bankruptcy proceedings, the judge to whom that case, C.A. No. 82–0555, was assigned, dismissed that suit without prejudice on December 9, 1982. Plaintiffs refiled this suit on January 24, 1983. Plaintiffs assert under such circumstances the statute of limitations applicable to plaintiffs' causes of action was tolled, citing *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 994, 996 (D.C.Cir.1973). On the other hand, defendants rely upon *Dupree v. Jefferson,* 666 F.2d 606 (D.C.Cir.1981) to support their position that the pendency of the earlier case, and subsequent dismissal without prejudice, did not toll the running of the statute of limitations on the federal claims. In view of the disposition we reach on another ground, we need not resolve this issue in this case.

and that the debtors submitted an opposition and thereafter there was a full hearing. Thereafter, on September 26, 1983, the Bankruptcy Court entered an Order which significantly recited:

"... and it appearing to the Court that the Trustee has evaluated, in his own independent business judgment the value of the assets of the estate relating to the property of the estate and all related claims relating to 1926 17th Street, S.E., Washington, D.C., which are assets of the estate, and has accepted an offer from Family Federal (sic) Savings and Loan Association for the purchase thereof, it is by the Court, this 26th day of September, 1983, hereby

ORDERED, that the Trustee in Bankruptcy is hereby authorized to convey to Family Federal (sic) Savings and Loan Association for the sum of $1,000.00 all of the estate's right, title and interest, including all claims and choses-in-action relating to or in any way affecting or connected with the property at 1926 17th Street, S.E., Washington, D.C., or any lien or deed of trust thereon; and it is further

ORDERED, that the Debtors' objections are hereby overruled; ..."

Certainly this language refutes any abandonment of the claim to the debtors, especially where the debtors have objected and their objections have been overruled.

Certainly, if the trustee-in-bankruptcy had formally entered this case as a party-plaintiff and had settled the claim with defendant Family Savings and Loan Association for $1,000.00 subject to the approval of the Bankruptcy Court, the plaintiffs Michael and Sharon Fair could not have proceeded with the prosecution of this case. The Magistrate concludes that the fact that he settled the claim with the defendant Family through the Bankruptcy Court without formally becoming a party-plaintiff in this case should make no difference. The Magistrate thus concludes that as a result of the Bankruptcy Court's Order of September 26, 1983, the plaintiffs Michael Anthony Fair and Sharon R. Fair no longer have any ownership interest in either 1926 17th Street, S.E. or in the causes of action involved in this case, the same having been sold to the defendant Family Savings and Loan Association.

■ Any question concerning the adequacy of the $1,000.00 compensation for the causes of action involved in this case must be answered in the context of the facts of this case. Even if the law permitted a bankrupt to pursue a cause of action where a trustee-in-bankruptcy's settlement of a claim may be so nominal as to suggest collusion, as not being in the best interest of the bankrupt estate and the creditors, and thus a constructive abandonment, this is not such a case. Normally, a trustee may enter into a compromise of a controversy involving a bankrupt's cause of action without being subject to review by the bankrupt, *Skelton v. Clements,* 408 F.2d 353 (9th Cir. 1969), and he is not required to burden the estate with the expenses and costs of litigation, where there is no substantial basis to believe that he can prevail in the civil case. Cf. *Stutts v. Waldrop,* 377 F.2d 275 (5th Cir.1967).

Turning to the facts of the instant case, it is significant to note first the Bankruptcy Judge expressly observed that the trustee had evaluated the assets and had exercised his own independent business judgment of the value of the assets in connection with the sale to Family Savings and Loan Association of the estate's right, title and interest, including claims and choses-in-action in any way connected with the property at 1926 17th Street, S.E. or any deed of trust thereon. Such an assessment by the Bankruptcy Judge should not be lightly disregarded, especially in view of the fact that the Bankruptcy Judge also considered the bankrupts' objections and overruled them.

Furthermore, the Magistrate has reviewed the entire court file, and especially the affidavits, the document exhibits involved in the financial transaction at issue, the discovery responses, and the submissions made in connection with Family Savings and Loan Association's previous motion for summary judgment in this case, con-

cerning the merits of the plaintiffs' Truth-in-Lending Act claim and the pendent causes of action. The Magistrate has specifically focused upon the strength of plaintiffs' claims against Family Saving and Loan Association in the face of its assertion of its holder in due course status and the representations by the debtors themselves that the loan was for a business purpose.

◼ The fact that one business purpose was falsely represented when the parties intended the loan to be for another business purpose would not make the loan a "consumer" loan for purposes of the Truth-in-Lending Act.[5] It clearly appears that courts in considering whether a transaction is primarily consumer or commercial in nature look to the transaction as a whole and the purpose for which credit was extended as disclosed to the lender. *Gallegos v. Stokes,* 593 F.2d 372 (10th Cir.1979). Many cases involve mortgaging real property or property for rental use. See, *e.g., Puckett v. Georgia Homes, Inc.,* 369 F.Supp. 614, 619 (D.S.C.1974) (purchase of a mobile home to be used as rental unit is not a consumer credit transaction); *Sapenter v. Dreyco, Inc.,* 326 F.Supp. 871, 873 (E.D.La.), *aff'd.* without opinion, 450 F.2d 941 (5th Cir.1971), *cert. denied,* 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1972) (cash from second mortgage on personal residence to meet payments on rental property is a commercial transaction).

Based on these authorities and the facts in this case, the trustee-in-bankruptcy could have concluded the plaintiffs, the loan broker, Ms. Daisy Hopkins,[6] and Mr. Norman Tillette of Nationwide Mortgage Corporation all knew that the purpose of the loan was to pay off the delinquent promissory note on a rental investment piece of property, and anticipated that Family Savings and Loan Association might not purchase the note if the true business purpose had been set forth in the loan documents, and thus the misrepresentation as to the specific business purpose of the loan in no way affected the nature of the loan as a true business purpose loan.

Further, in deciding to sell the claim for $1,000.00, the trustee-in-bankruptcy could have conceivably considered all of the other evidence indicating that 1926 17th Street, S.E. was a rental or investment property and that if the facts had been truly represented on the loan and settlement papers, the loan would be considered a business or commercial loan, and the charges made in connection with the loan would have been entirely proper. Among those facts were the following. In 1979 when Michael Anthony Fair applied for a $10,000.00 loan on 1926 17th Street, S.E. he had executed a "Commercial Loan Application" and the approximate sum of $3,000.00 had been deducted from that loan's proceeds as a placement fee and for related charges. He thereafter complained to Mr. Quittschreiber about the discount and interest rate, and according to Family Savings and Loan Association, he was told that the 30% deduction was proper since the loan was for a business purpose. The papers executed in connection with that transaction expressly stated the loan had been made for a business purpose. Thus the loan here was not Mr. Fair's first business purpose loan. While in this case he claims he was not told the interest rates, the settlement sheet clearly indicated the discount to Nationwide of $4,260.00 and the broker's fee to Ms.

5. Even assuming that Ms. Daisy Hopkins was operating under the assumption that obtaining a loan to pay off a delinquent promissory note on rental or investment property was not a business purpose, and she urged the misrepresentation to avoid the restrictions of the Truth-in-Lending Act and applicable D.C.Code usery or consumer protection provisions, this would not make her liable, if, in fact, the purpose of the loan as disclosed to her was a business purpose. Likewise, even if Mr. Norman Tillette, President of Nationwide, was under the same misapprehension, this would not make the loan a "consumer" loan, if under the law a loan on rental or investment property, to prevent foreclosure, is a commercial or business purpose loan.

6. There is a dispute as to whether Ms. Daisy Hopkins was an agent for the plaintiff seeking a source of loan funds on behalf of the plaintiffs or whether she was a broker agent for Nationwide Mortgage Corporation. Nationwide denies that she was its employee or agent.

Hopkins of $2,130.00 and he had prior experience with similar deductions in business purpose loans. The trustee could have also been influenced by the fact that Mr. Fair had completed his own Federal income tax returns and for the years 1980 and 1981 he had listed this property as rental property and had claimed depreciation and losses. That this was rental property could also be established by at least three (3) suits against tenants in the District of Columbia Superior Court.[7] Another fact suggesting that the property was rental property was a claim of exemption statement filed on or about June 24, 1980 with the D.C. Rental Accommodation Office for 1926 17th Street, S.E.[8] Considering all of these facts, the trustee could have concluded that the chances of the plaintiffs prevailing were so remote,[9] that selling the bankrupts' interest in 1926 17th Street, S.E. and any related causes of action to Family Savings and Loan Association for $1,000.00 was in the best interest of the estate and would be a prudent and responsible course of action.[10]

■ Based on the foregoing analysis and precedents, it is concluded that the defendant Family Savings and Loan Association's legal position is sound and its motion to dismiss the complaint by Michael Anthony Fair and Sharon Fair against Family Savings and Loan Association should be granted. Further, since the plaintiffs no longer can maintain the causes of action in this case, their rights having been transferred to Family Savings and Loan Association, plaintiffs can no longer proceed against the defendants Nationwide Mortgage Corporation, or the defendants Southeast Title Corporation or Daisy Hopkins. It is conceivable that Family Savings and Loan Association, having obtained the interest of the plaintiffs, might wish to pursue the causes of action against the other three (3) defendants.[11] Assuming that Family Savings and

7. Family Savings and Loan Association has submitted exhibits in cases LT 43769–80, 62330–80 and 51001–81 in which Mr. Fair brought suit against tenants of 1926 17th Street, S.E.

8. Family Savings and Loan Association has consistently taken the position throughout this litigation that the loan at issue here was a business purpose loan to preserve the business and investment property of the plaintiffs and to save 1926 17th Street, S.E. from imminent foreclosure. It was indeed clear from the very beginning of this transaction that the property at issue was not the personal residence of Michael and Sharon Fair on May 1, 1981, as Ms. Hopkins first spoke to him in the yard of his residence, 1928 17th Street, S.E. From what he told Ms. Hopkins, based on his own affidavit, she would have been justified in concluding that the property next door was an investment and rental piece of property.

9. The trustee had a reasonable basis for concluding that Mr. Fair was sophisticated as to the difference between consumer loans and business purpose loans and that he knowingly acquiesced in material misrepresentations to obtain a quick loan outside the terms of the Truth-in-Lending Act and the District of Columbia usery and consumer protection provisions and to deceive the ultimate purchaser of his note. Cf. *Browning J. Peyton v. Aetna Mortgage Investment Corp., et al.,* C.A. No. 82–1316 (D.D.C. March 15, 1983) (Gesell, J.). See also, *Levora Williams, et al. v. Nationwide Mortgage Corporation, et al.,* C.A. No. 82–3706 (D.D.C. March 25, 1983) (Gesell, J.).

10. It is noted that Family Savings and Loan Association filed a counterclaim against the plaintiffs asserting three (3) causes of action, i.e., debt, fraudulent misrepresentation and breach of warranty. It is most probable that plaintiffs were relieved of these potential liabilities in the bankruptcy proceeding, and if that is so, Family Savings and Loan Association should file a praecipe dismissing its counterclaim within ten (10) days hereof.

Family Savings and Loan Association also crossclaimed against Nationwide Mortgage Corporation alleging fraudulent inducement seeking indemnity of actual damages of $30,000.00, punitive damages of $500,000.00, attorney's fees and costs, and alternatively, for negligent misrepresentation seeking damages for diminution of the value of the promissory note by the Fairs, plus attorney's fees and costs. As it appears that the crossclaim was predicated upon the contingency of Family Savings and Loan Association being found liable to the Fairs, the Fairs' causes of action now being dismissed, it would appear that Family Savings and Loan Association would not be inclined to pursue its crossclaims. If this be so, a praecipe dismissing the crossclaims should also be filed within ten (10) days hereof.

11. The Magistrate notes that defaults were entered against the defendants Southeast Title Corporation and Daisy Hopkins. Southeast has since moved to vacate the default and to

Loan Association now stands in the shoes of the plaintiffs, and has a right to proceed against the remaining defendants as substituted plaintiff,[12] the Magistrate will defer ruling on dismissal as to these defendants for a period of ten (10) days. If Family Savings and Loan Association does not intend to pursue any claims against the defendants, as substituted plaintiff, it shall file a praecipe so stating within ten (10) days of this Order.

A separate Order granting defendant Family Savings and Loan Association of Virginia's motion to dismiss or in the alternative, for summary judgment, is being issued concurrently with the filing of this Memorandum Opinion.

dismiss the complaint as to it on the grounds that the court in C.A. No. 82–0555 had dismissed the complaint as to it with prejudice. The Magistrate will rule upon its motions separately.

12. If it intends to proceed as substitute plaintiff, it shall file a memorandum of law, with points and authorities, within ten (10) days of this Order. The defendants still remaining in the case shall have five (5) days to respond.